**In re Raymond BERNDT a/k/a Raymond R. Berndt, Debtor.**

**Bankruptcy No. 91–05233.**

United States Bankruptcy Court, D. North Dakota.

April 25, 1991.

Gary E. Cameron, U.S. trustee, Moorhead, Minn.

Joseph F. Larson, Jamestown, N.D., for debtor.

## ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This matter is before the court on its own Order to Show Cause issued sua sponte on March 18, 1991, directing the Debtor to appear and show cause why his Chapter 7 Petition should not be dismissed pursuant to the substantial abuse provision of section 707(b) of the Bankruptcy Code. In addition to appearing and testifying at a hearing held on April 23, 1991, the Debtor also responded by Affidavit.

The Debtor's case was commenced by Petition filed March 11, 1991, and came to the court's attention after an examination of the schedules indicating that from a joint monthly net income of $3,279.00 the Debtor and his wife had monthly expenses of $2,864.00 including certain expenses which left unexplained, appeared excessive and which suggested to the court that a considerable budget surplus may exist each month which, if contributed to a repayment plan, would retire a significant amount of the Debtor's $23,306.00 of unsecured debt.

On April 22, 1991, the Debtor filed an Amended Schedule of Income and Expenses together with a written response to the Order to Show Cause. In the response the Debtor indicates that the total net monthly income between he and his wife is actually $3,153.00, all of which is derived from various retirement benefits. This past December the Debtor, aged 71, underwent quadruple heart by-pass surgery and in January of 1991 suffered congestive heart failure. Due to this illness he states he has incurred considerable medical expense which will continue. The amended monthly expense schedule depicts total monthly expenses of $2,672.00 which, except for an unexplained expense of $424.00 for "miscellaneous and gifts", while perhaps not unduly excessive or unwarranted, are by no means cut to the bare minimum. For instance, despite a professed hardship, the Debtor and his wife are spending $66.00 per month on newspapers, periodicals and books, $168.00 per month on recreation and $167.00 per month on charitable contributions. Without even considering the appropriateness of the $424.00 per month deduction for miscellaneous and gifts, the monthly budget of the Debtor and his wife suggests a monthly budgetary excess of approximately $481.00. If the miscellaneous sum of $424.00 is added in, this excess becomes $905.00.

Schedule A–3 discloses that the $23,-306.41 of unsecured debt, all of which was incurred in 1990, stems from the use of four bank cards ($17,609.73) and checking plus overdrafts at two banks ($5,696.68). In his Affidavit, the Debtor states these funds were used for stock market investments. Attachments to the Affidavit reveals the Debtor opened an option account with A.G. Edwards & Sons, Inc. in July 1990 and thereafter commenced an extremely heavy trading schedule through December 1990.

The Debtor's principal argument is that the unsecured debt stems primarily from his dabbling in the stock market and although charged against various credit cards and checking plus accounts, the $23,-306.00 was not for consumer purchases and consequently should not be regarded as "consumer debt" within the meaning of section 707(b) of the Bankruptcy Code. Citing *In re Kelly*, 841 F.2d 908 (9th Cir. 1988), the Debtor argues that a debt incurred for business ventures or other profit seeking activities is not a consumer debt.

Section 707(b) was enacted by Congress as a means of combatting what Congress viewed as an abuse of Chapter 7 by consumer debtors who had the ability to pay. The operative language of section 707(b) is "primarily consumer debts" and "substantial abuse". The term "consumer debt" is defined in section 101(7) of the Code as a debt incurred by an individual primarily for a personal, family, or household purpose. In *Kelly, supra*, the court stated that determining whether a particular debt is within the definition of consumer debt, one must look to the purpose of the debt. In the 5th Circuit case of *Matter of Booth*, 858 F.2d 1051 (5th Cir.1988), the court held that when a credit transaction involves a profit motive it is outside the definition of consumer credit. Accordingly, held the

court, "the test for determining whether a debt should be classified as a business debt, rather than a debt acquired for personal, family or household purposes, is whether it was incurred with an eye toward profit". In *Booth* the debtor, a physician was also engaged in numerous other business ventures including a mini warehouse operation and marina. He incurred various secured and unsecured loans in the furtherance of those business ventures and the *Booth* court, applying the profit motive test, held that those loans constituted business, as opposed to consumer debt. The Debtor in the instant case suggests that whenever a debt is related, however incidentally, to profit seeking activities, it is plainly not consumer debt. Citing *In re Almendinger*, 56 B.R. 97 (Bankr.N.D.Ohio 1985), the debtor would have himself characterized apparently as a stockbroker who incurred credit card debts in order to pay off investment losses and to reinvest in the market in hopes of recouping such losses. While this court agrees that the profit motive test is the appropriate standard, it does not agree that all debt incurred for the purpose of stock market investment is a business debt as opposed to a consumer debt. In the instant case the Debtor is not engaged in any business—both he and his wife are retired. The "investment" which the Debtor points to was incurred as the result of a personal decision to invest in the stock market. It was not motivated by ongoing business requirements. A desire to invest in the market can be regarded as many things. Indeed, under various circumstances it can be regarded as gambling, a hobby, or a whim. When an individual borrows money and uses that money to purchase securities through a broker that enterprise is not the same as incurring a debt for the furtherance or continuation of business. This court does not believe that the sense of Congress in enacting section 707(b) or in defining consumer debt as a debt incurred primarily for a personal,

family or household purpose, intended to exclude investments in the stock market made for a personal, rather than business reason.[1] In sum, the court is of the opinion that the unsecured debt derived from the use of various credit cards and checking plus accounts is consumer debt in the circumstances of this case. Accordingly, the first prong of section 707(b) has been met.

■ The second prong is whether "substantial abuse" exists. This court in several decisions has held that the following are the criteria against which the facts of a particular case are to be assessed in determining whether substantial abuse exists sufficient to mandate dismissal under section 707(b):

1. Whether the debtor has a likelihood of sufficient future income to fund a Chapter 13 plan which would pay a substantial portion of the unsecured claims;

2. Whether the debtor's petition was filed as a consequence of illness, disability, employment or some other calamity;

3. Whether the schedules suggest the debtors incurred cash advances and consumer purchases in an excess of their ability to repay them;

4. Whether the debtor's proposed family budget is excessive or extravagant;

5. Whether the debtor's statement of income and expenses is misrepresentative of their true financial condition.

*In re Kress*, 57 B.R. 874 (Bankr.D.N.D. 1985). The most important criteria is the debtor's ability to make repayment. The Eighth Circuit in the recent decision of *In re Walton*, 866 F.2d 981 (8th Cir.1989), held that while a court may indeed take a debtor's unique hardships into consideration, the crucial factor in determining "substantial abuse" is whether the debtor's future income could fund a repayment plan under the protection of Chapter 13.

The Debtor's wife is not a co-debtor in this case and, as the Debtor correctly points out, spousal income should not be

---

**1.** Given the level of the bank card use in a relatively short period of time coupled with the Debtor's income, apparent retired status and nature of the expenditure, the circumstances strongly suggest the bank card issuers may have

a cause of action under section 523(a)(2)(A) were this case to remain in Chapter 7. *See generally, In re Hinman*, 120 B.R. 1018 (Bankr. D.N.D.1990).

made liable for debts incurred by the Debtor. As husband and wife, however, the Debtor and his non-joining spouse maintain a joint household and most of their living expenses are, as is typical, incurred in that fashion without segregation or regard as to which spouse consumed the benefit. Home mortgage, maintenance, utilities, taxes, transportation, insurance and other daily living expenses are of the type normally borne by both spouses living under one roof. Hence, in calculating whether there is discretionary income available to fund a plan one must, of necessity, observe to what degree a debtor's daily living expenses are shared as co-obligations of the non-debtor spouse or are assumed completely by that spouse. The effect of this factor renders a considerable portion of the Debtor's income in this case discretionary and available for funding of a plan. To be clear, the non-debtor spouse's income is not being rendered liable for the debts of the Debtor but rather is simply being considered in determining whether the Debtor himself has available discretionary income by virtue of the fact that he and the non-debtor spouse share a joint household.

In the instant case it is abundantly clear that even without factoring in the unexplained $424.00 that the Debtor has substantial funds available with which to make a significant contribution towards retirement of the unsecured debt. A contribution of only $480.00 per month against the outstanding unsecured debts of $23,306.00 would result in repayment of 74% of the unsecured debt in thirty-six months. If one were to factor in the $424.00 which this court regards as excessive for a monthly gift amount, the monthly contribution rises to $900.00, which would retire 100% of the unsecured debt in less than three years!

In view of the foregoing, the court concludes that this is a case of substantial abuse of Chapter 7 and that by affording the Debtor in this case Chapter 7 relief would be inappropriate and contrary to the intent of Congress.

Accordingly, and for the reasons stated, IT IS ORDERED that the Chapter 7 Petition of Raymond Berndt filed March 11, 1991, be dismissed ten days after the date of this Order unless within the intervening period the Debtor chooses to convert to a Chapter 13. SO ORDERED.