**In re Mark MESSENGER, Debtor.**

**Bankruptcy No. 94–50976.**

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Feb. 27, 1995.

Robert E. Owens, Akron, OH, for debtor.

Donald M. Robiner, U.S. Trustee, Ohio/Michigan Region IX, Cleveland, OH.

**Order Regarding Motion of U.S. Trustee for Dismissal Pursuant to 11 U.S.C. § 707(b)**

MARILYN SHEA–STONUM, Bankruptcy Judge.

This matter is before the Court on the Motion of the United States Trustee (the "Movant") seeking dismissal of this case pursuant to 11 U.S.C. § 707(b) (the "Motion"). That Motion was the subject of an evidentiary hearing before this Court. At the conclusion of that hearing, the Court informed the parties that each could, but was not required to, submit Proposed Findings of Fact and Conclusions of Law. The Movant submitted such a pleading; the Debtor did not.

## I. *Factual Background*

Based upon the testimony and other evidence admitted at the hearing, the following facts are undisputed. Mark Messenger (the "Debtor") filed a petition for relief under chapter 7 of the Bankruptcy Code on June 17, 1994. The total liabilities scheduled by the Debtor are $19,328.29 and include priority claims of $2,415.63 and general unsecured claims of $16,913.26. The unsecured debt was incurred through the use of five credit cards and a loan from the Ohio Edison Credit Union.

The Debtor has been employed by Ohio Edison for 18 years and now holds the position of an associate buyer. His gross monthly income is $3,614, and his net monthly take home pay is $2,458.

In 1992 the Debtor married for a second time. The Debtor has a 14 year old stepdaughter who lives with his wife and him. The Debtor also has a daughter who is over 18 years old and a disabled son who is 19. Child support in the amount of $265 per month is deducted from his paycheck based upon a support order entered by a West Virginia court on March 30, 1982. (Debtor's Exhibit A.) At the hearing, upon examination by the Court, the Debtor testified that his son has cerebral palsy and is disabled. Thus, he anticipates that his support obligation for his son will continue into the son's adult life. However, as is discussed below, because the son has reached the age of 18, the status of the West Virginia court order compelling such support payments is unclear.

The Debtor's wife did not file for bankruptcy. She is employed and has incurred debt in her individual name both before and after her marriage to the Debtor. Her gross

monthly income is $1080, and after deductions she has a net monthly income of $837. She has credit card debt in her separate name totaling approximately $7,700 as of October, 1994. (Debtor's Exhibits E, F, and G.) Upon examination by the assistant U.S. Trustee, the Debtor noted that his wife has a judgment against her former husband for unpaid child support. Debtor further testified that he did not know the amount of the judgment, what future payments might be due, or the collectibility of such judgment.

The combined monthly take home pay of the Debtor and his wife is $3,295. The Debtor originally filed schedules reflecting only his income and his expenses. He subsequently amended Schedule J to show monthly expenses for both him and his wife in the amount of $3,197. Included in the revised budget were the following items which have drawn the particular attention of the U.S. Trustee: food ($800), clothing ($150), transportation ($400), recreation ($125), credit card payments for the wife's separate accounts ($300), cable television ($42), and charitable contributions ($16). On further examination by the assistant U.S. Trustee, the Debtor acknowledged that he had inadvertently included auto insurance of approximately $90 per month under two separate categories, and he agreed that the automobile expenses should accordingly be reduced by that amount to between $305 and $310. However, Debtor also noted that he had excluded inadvertently the $20 per week paid to a neighbor who supplies after school care for his step-daughter. His schedules further reflect that the Debtor rents his residence and that he drives an eight year old car. The assistant U.S. Trustee also elicited the Debtor's testimony that, if his wife were to pay only the minimum amount due on her credit card accounts, such payments would total approximately $142 for the two accounts that state minimum payment amounts. The Debtor noted that one of his wife's accounts, which had an October 1994 balance of $1,189.68, does not set forth any minimum payment amount. Such minimum payments would result in little or no diminution of the principal amounts owing on these accounts.

## II. Issues

The Movant identified, in the Court's analysis, two issues: whether (1) the Debtor's ability to repay a substantial portion of his unsecured obligations if some of his discretionary expenses were reduced or eliminated (2) together with the arguably preferential treatment of his nondebtor spouse's creditors demonstrates that it would be a substantial abuse of the bankruptcy process to grant a chapter 7 discharge to the Debtor. In addition, the Court is concerned about the Debtor's request that he be credited with making child support payments pursuant to a court order that may have expired because his disabled son has reached the age of majority under West Virginia law and because the order was entered at a time when the continuing support obligation for disabled adult children had not been addressed in that state.

## III. Law

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O). After notice and hearing, the court, on its own motion or on a motion by the United States Trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that granting of relief would be a substantial abuse of the provisions of chapter 7 of the Bankruptcy Code. There shall be a presumption in favor of granting the relief in the form of a discharge of scheduled debts as requested by the debtor through the filing of his chapter 7 petition. 11 U.S.C. § 707(b).

## IV. Discussion

The Sixth Circuit has considered the appropriate application of 11 U.S.C. § 707(b) in *In re Krohn*, 886 F.2d 123 (6th Cir.1989). The *Krohn* Court stated that:

> One of the primary purposes of bankruptcy is to relieve an honest debtor from the weight of oppressive indebtedness and permit him to start afresh....
>
> Section 707(b) was among the consumer credit amendments to the Bankruptcy Code enacted in 1984 ... These amendments were passed in response to an in-

creasing number of Chapter 7 bankruptcies filed each year by non-needy debtors....

In essence, § 707(b) allows a bankruptcy court to deal equitably with the unusual situation where an unscrupulous debtor seeks to enlist the court's assistance in a scheme to take unfair advantage of his creditors; it serves notice upon those tempted by unprincipled accumulation of consumer debt that they will be held to at least a rudimentary standard of fair play and honorable dealing.

... In determining whether to apply § 707(b) to an individual debtor ... a court should ascertain from the totality of the circumstances whether he is merely seeking an advantage over his creditors, or instead is "honest," in the sense that his relationship with his creditors has been marked by essentially honorable and undeceptive dealings, and whether he is "needy" in the sense that his financial predicament warrants the discharge of his debts in exchange for the liquidation of his assets.... Substantial abuse can be predicated upon either lack of honesty or want of need.

*Id.* at 125–26 (citations omitted). In the instant matter, the Movant clarified at the hearing that the motion was premised upon the issue of want of need. The amendments to the Debtor's schedule were not a reflection of an initial absence of honesty, but rather an honest misunderstanding that the scope of the information was to include his wife's income and expenses. The matter then reduces to the issue of whether this debtor lacks a sufficient level of need for financial relief in chapter 7. Again in *Krohn,* the Sixth Circuit attempted to give guidance in the consideration of this issue:

Among the factors to be considered in deciding whether a debtor is needy is his ability to repay his debts out of future earnings.... That factor alone may be sufficient to warrant dismissal. For example, a court would not be justified in concluding that a debtor is needy and worthy of discharge where his disposable income permits liquidation of his consumer debts with relative ease. Other factors relevant to need include whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

*Id.* at 126–27 (citation omitted).

■ The Debtor's need in this case, particularly when contrasted with the would-be debtor in *Krohn,* is not easily dismissed.[1] The Debtor and his wife do not own their residence, but rather rent it. Based upon the reported monthly rent ($472.00), the Court assumes that it is a modest residence, at best. Neither he nor his wife drive late model automobiles, his being a 1987 Cavalier and hers being a 1991 Cavalier with the $215 monthly payments financed through General Motors Acceptance Corporation. As mentioned above and discussed more fully below, the Debtor appears to be responsible for the partial support of his adult son who has cerebral palsy, support payments which he has continued to have deducted from his payroll even after that son reached age 18 on July 2, 1993. This expense that is now approximately $265.00 per month figures significantly in the Court's assessment of this matter. According to the Debtor's testimony, the debt that he accumulated on his five

---

1. *Krohn* was an executive whose annual compensation had risen from approximately $56,000 in 1985 to $80,000 in 1988; after his 1986 bankruptcy filing, he negotiated with the chapter 7 trustee to keep his equity in a condominium owned by his wife and him for the payment into the estate of approximately $3,800; shortly thereafter, they sold the condominium for $13,500 more than the value reported on his chapter 7 schedules and nearly $30,000 more than the debt secured by the mortgage on the condominium; while seeking to discharge more than $143,000 in consumer debt in his chapter 7 case, he and his wife were negotiating for the purchase of a new home valued at $156,000, the financing for which was to be supplied by the only creditor whose unsecured debt Krohn proposed to reaffirm in his chapter 7 case. In short, that case was riddled with bad faith, an element that the Movant has conceded is absent in this case.

credit cards developed over a number of years, and there is no evidence of any increase on the "eve of bankruptcy" in his spending patterns. The principal on his accumulated debt including his annual child support payments nearly equals to what he can expect to "take home" from his job for an entire year.

 In short, while the Debtor makes a reasonable salary and, as he admitted at the hearing, he might have been better able to manage his personal finances to avoid the situation in which he has found himself, in contrast to the debtor in *Krohn*, he is not a highly compensated executive who is resorting to bankruptcy in an irresponsible manner. The Movant has pointed to the fact that the Debtor's wife has chosen not to file bankruptcy with him, but instead to attempt to pay the outstanding balances on her three credit cards by paying approximately 40 percent more per month than the required minimum monthly payments. The Movant has characterized this approach to the couple's finances as resulting in a pattern of preference of the wife's creditors. It is an understandable, indeed, a valid characterization in comparing the treatment of the husband's and the wife's creditors. In this Court's opinion, it is, however, not an impermissible result, particularly on the facts in this case. The husband and the wife were each extended various lines of credit in his and her own name, most if not all of such credit lines having been extended prior to their 1992 marriage. Therefore, creditors did not rely on her income, and her creditors did not rely on his income. When only one spouse files for chapter 7, the assets, liabilities and future income prospects of the non-filing spouse are factors to be considered in applying § 707(b). *In re Wilkinson*, 168 B.R. 626 (Bankr. N.D.Ohio 1994); *In re Smith*, 157 B.R. 348 (Bankr.N.D.Ohio 1993); *Matter of Strong*, 84 B.R. 541 (Bankr.N.D.Ind.1988); *In re Bryant*, 47 B.R. 21 (Bankr.W.D.N.C.1984). There is, however, no requirement that any bankruptcy filing by a married person must be a joint filing with his or her spouse. Each case must be analyzed on its own terms. It is not the function of a federal bankruptcy court to reconfigure the terms on which credit was extended to individuals into *ex post facto* joint and several obligations. Indeed to do so would be inconsistent with other statutes incorporating important federal policies. *See* Equal Credit Opportunity Act, as amended, 15 U.S.C. § 1691.

In this case, the Debtor's wife wants to pay her creditors in full and to maintain her credit rating. That is a more doable goal than satisfying all of his creditors. Neither § 707(b) nor *Krohn* appear to prohibit them from making this choice. While it is possible to construct a scenario where the husband could propose a chapter 13 plan to pay some percentage to his creditors, he has chosen instead to accept the consequences of the liquidation process of chapter 7. Especially when that choice is made to promote the full payment of his wife's consumer debt, subject to the reservations set forth below, it is not a substantial abuse of the provisions of chapter 7 to permit the case to be administered and the debtor to be discharged. The preference that is being shown for the wife's creditors is a function of the separate extension of credit to her and is not a result subject to avoidance under the Code or otherwise prohibited by 11 U.S.C. §§ 547(b) or 549.

 Through its Motion, Movant seeks to "encourage" the Debtor to convert his case to a chapter 13. Among other likely consequences of such a step would be a postponement of the date on which the Debtor would receive his discharge until he had fully performed under the terms of such a plan. Unless the Debtor is in a position to propose a plan paying his unsecured creditors a dividend of at least 70 percent, his eligibility to seek any further relief under chapter 7 would be delayed by the minimum three year term one would posit for such a plan. 11 U.S.C. § 727(a)(9). While the Debtor no doubt hopes never to have to resort to a bankruptcy filing again, this is a Code-based distinction in his rights that can serve as a basis for a reasoned resolution of this Motion.

The amount that would be *required* for the Debtor to fund a plan that would pay his priority creditors in full and pay a 70 percent dividend to his general unsecured creditors appears to be $14,254.91. To this amount must be added standard attorney's fees and

the chapter 13 trustee fee. Thus, a plan resulting in payment in full of the Debtor's priority claims, attorney's fees, chapter 13 trustee fee and a 70 percent dividend to general unsecured creditors would require minimum monthly payments of approximately $450, if one assumes a 36-month plan. The legislative history of § 1322(c) militates against any assumption that a chapter 13 plan should exceed 36 months. *See In re Festa*, 65 B.R. 85, 85-86 (Bankr.S.D.Ohio 1986).

Certain elements of the Debtor's budget may be looked upon as generous, but, subject to the critical exception noted below, this Court does not believe that the Debtor should be viewed as clearly able to find $350 in addition to the present excess income identified in his bankruptcy schedule.

 In setting forth the expenses of his family, as noted above, the Debtor has included the support payment for his disabled adult son. This payment is currently being deducted from this pay pursuant to a 1982 West Virginia court order. That order is silent on the issue of whether the Debtor's obligation continues beyond the time that his children by his first marriage reached the age of majority. At the time that it was entered, West Virginia statutes did not address the obligation of a non-custodial parent to support a disabled adult child beyond the normal age of majority. In 1991, the Supreme Court of Appeals of West Virginia ruled that, if a child is incapable of supporting himself as a result of physical or emotional disabilities, the family law master and the circuit court have jurisdiction to order continued support of such a child beyond the child's age of majority. *Kinder v. Schlaegel*, 185 W.Va. 56, 404 S.E.2d 545 (1991).

The Debtor's monthly contribution to his son's support is a material amount in the Court's analysis. Accordingly, the Court requires assurance that the Debtor will continue to contribute to his son's support in at least the historic level. Although the Debtor apparently has not challenged his continuing obligation under the 1982 court order, before this Court finally denies the Motion, the Debtor must supply evidence of his continued future performance pursuant to that order.

Such evidence would best be supplied through an updated agreed order entered in a court with appropriate jurisdiction. This Court will allow the Debtor 45 days to provide evidence on this issue.

For the foregoing reasons, the Motion is provisionally denied. The Court will hold a further hearing on the issue of assurance of the Debtor's ongoing support of his disabled son on April 19, 1995 after which the Court will enter a final order on this matter.

IT IS SO ORDERED.