In re Keith Warren **DEMPTON**, Debtor.

**Bankruptcy No. 94–43319–3–7–ABF.**

United States Bankruptcy Court,
W.D. Missouri.

May 1, 1995.

Bruce A. Strauss, Merrick, Baker, Hufft & Strauss, P.C., Kansas City, MO, for plaintiff.

Mark Allen Roy, Kansas City, MO, for defendant.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

The United States Trustee (the "Trustee") has moved to dismiss this Chapter 7 case as being a substantial abuse. 11 U.S.C. § 707(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons set forth below, an Order of Dismissal will be entered unless debtor converts to Chapter 13 within ten days of the entry of this Memorandum Opinion.

Keith Warren Dempton ("debtor") has unsecured debts totaling $31,399.78. He stipulated that such debts are primarily consumer debts. Debtor's residence is also encumbered by two mortgages with a total due of $191,802.48. Debtor intends to reaffirm both mortgages.

Debtor is employed as a plant manager, and has been with the same employer for twenty-five years. He has three children from a previous marriage. The two older children are emancipated, and debtor's former spouse has custody of a third child, aged seventeen. Debtor's second wife has two minor children. She does not work outside the home.

The trustee offered evidence sufficient to find that in 1994 debtor had average monthly gross income of $7,916.68, or a total of $95,000.16 for the year.[1] After deduction of taxes, health insurance, and other payroll deductions, the Trustee showed that debtor in 1994 had monthly net income averaging $5,563.10.

In addition, debtor's current wife receives child support payments of $700.00 per month for her two minor children. Such support payments are received during the ten months of the year that the children live with the debtor and his wife. For purposes of section 707(b) analysis, that amount is treated as additional income to the household. *In re Messenger*, 178 B.R. 145, 149 (Bankr.N.D.Ohio 1995) (citations omitted) (holding that "[w]hen only one spouse files

for chapter 7, the assets, liabilities and future income prospects of the non-filing spouse are factors to be considered"). Debtor contends that such figure should be reduced to reflect the fact that his wife does not receive such child support payments year round. However, debtor did agree that the child support payments received are spent exclusively for the benefit of the children. As a result, during the months that the children are away, the family household expenses should be reduced accordingly. For these purposes, I find that the net income available for payment of the household expenses is $6,263.10 per month.

Turning to debtor's expenses, the Trustee proved monthly expenses in the amount of $5,699.32. Included in that total are house payments totalling $2,191.00. Based on such income and expenses, the Trustee contends that the debtor has excess monthly income of $563.78. The Trustee, thus, maintains that debtor could fund a Chapter 13 plan and pay a substantial portion of his debts with that amount of excess monthly income.

At the hearing, debtor testified that he has less excess monthly income than is reflected in the Trustee's accounting. Debtor first stated that he had reaffirmed his obligations to Sears and Montgomery Wards, in the total amount of $62.00 per month. Debtor also testified that the cost of his health insurance had increased by $24.00 per month. With those additional deductions, debtor's excess monthly income is approximately $477.78 per month.

Debtor then testified that the remainder of his excess monthly income is largely absorbed because of obligations his wife brought to their marriage. Mrs. Dempton obtained a dissolution of her prior marriage in California. Debtor testified that the dissolution decree requires her to assume certain credit card and other obligations incurred during her former marriage totaling $2,135.41. Including interest and finance charges, Mrs. Dempton is obligated to make minimum payments on such debt of $396.00

---

1. Debtor's tax return for 1994 shows income of $98,161.00. The difference is largely attributable to a car allowance.

per month. According to debtor,[2] he and his wife are concerned that if she does not continue paying on these obligations, her ex-husband might initiate a proceeding in California to obtain sole custody of her minor children. Debtor offered no further basis for the Court to find that such a proceeding would either be filed or would be warranted. In any event, I find the argument is irrelevant to a determination of substantial abuse in debtor's Chapter 7 bankruptcy filing.

Debtor also claims additional extraordinary expenses incurred by Mrs. Dempton related to her children's travel to visit their father in California. According to debtor, the dissolution decree provides that debtor's wife is to provide transportation for one child and her ex-husband is to provide transportation for the other child in order for the children to visit their father in California for eight weeks each year. Debtor stated that his wife elects to accompany her children on the airplane, so that they do not travel alone. She, therefore, purchases two round trip tickets for herself each year and that the total cost of all airline transportation is $2,100.00 per year. Debtor acknowledged that his wife is not required to accompany the children to California.

The issue thus presented is whether debtor should be allowed to use his excess monthly income to pay obligations his wife brought to their marriage, rather than to pay his own obligations. Section 707(b) provides that:

> (b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but [and] not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C. § 707(b).

■ In the Eighth Circuit the primary factor in substantial abuse cases is the debtor's ability to pay his debts out of future income or, in other words, his ability to fund a Chapter 13 plan. *In re Walton*, 866 F.2d 981, 985 (8th Cir.1989). A Chapter 13 plan is confirmable if, among other things, the plan provides that all of debtor's projected disposable income is applied to make payments under the plan. 11 U.S.C. § 1325(b)(1)(B). Disposable income is determined by focusing on debtor's future projected income and expenses. *Id.* at 984. In determining the debtor's future reasonable expenses, a court can certainly consider the cost necessary to support the children of the debtor's spouse. *See, In re Braley*, 103 B.R. 758, 760 (Bankr. E.D.Va.1989), *aff'd, Waites v. Braley*, 110 B.R. 211 (E.D.Va.1990); *In re Wegner*, 91 B.R. 854, 859 (Bankr.D.Minn.1988) (holding that a bankruptcy filing by debtors was not substantial abuse even though debtors supported their adult children and grandchildren without having the legal obligation to do so). But paying antecedent debts allocated in a dissolution proceeding and accompanying children during an airline flight do not go to the issue of feeding, clothing, and sheltering debtor's stepchildren. I find, therefore, that allowing debtor to discharge his obligations so that his wife can pay her obligations would be a substantial abuse pursuant to 11 U.S.C. § 707(b). As a result of this determination, I also find that debtor has $477.78 in disposable income. If debtor elects to convert this case to one under Chapter 13, debtor could pay a total of $17,200.08 over three years, representing 54.77% of all unsecured debts, by committing his excess monthly income for plan payments. 11 U.S.C. § 1322(d). In the course of a five-year plan, debtor could pay 91.29% of his debts. *Id.*

■ Dismissal of this case will leave the debtor and his wife with a number of alternatives. Mr. Dempton can convert the Chapter 7 case to a Chapter 13 case. Mrs. Dempton could find a job and contribute her earnings to pay her own obligations. *See, e.g., In re Messenger*, 178 B.R. 145, 149 (Bankr. N.D.Ohio 1995) (the court refused to dismiss a case where debtor and wife were using combined earnings to pay certain obligations incurred by wife prior to marriage, and where debtor was supporting a disabled

---

**2.** Debtor's wife did not testify and her California dissolution decree was not offered into evidence.

adult son). Alternatively, Mrs. Dempton could discharge her debts by filing her own bankruptcy case.[3] Mrs. Dempton can also petition for a modification of her dissolution decree to require her former husband to contribute to her airfare if she can convince the California courts it is necessary for her to accompany her children on their yearly visits to their father. It is understandable that debtor prefers a simple discharge of his debts over each of these alternatives. However, section 707(b) is intended to balance the interests of the debtor who cannot pay debts as they come due against the creditors' interest in obtaining repayment of at least a portion of said debts if such repayment would not be a burden. S.Rep. No. 65, 98th Cong. 1st Sess. 43 (1983). To allow this debtor to retain $477.78 in disposable income each month while discharging $31,399.78 in unsecured debt is the type of abuse Congress sought to eliminate with the passage of section 707(b).

Debtor is hereby granted ten days in which to determine if he wishes to convert the case to Chapter 13. If debtor does not convert this case within ten days, an Order dismissing this case will be entered.

---

**3.** Although not necessary to my decision, I note that Mr. Dempton's bankruptcy petition contains a signature block for Mrs. Dempton, with her name set out below such signature block, but Mrs. Dempton apparently chose not to join in her husband's Chapter 7 filing.