**In re Erminia REESE, Debtor.**

**Bankruptcy No. 98–53227.**

United States Bankruptcy Court, N.D. Ohio, Eastern Division.

July 26, 1999.

Derek Rippy, Office of U.S. Trustee, for movant.

Michael J. Moran, for respondent.

## ORDER DENYING MOTION TO DISMISS

MARILYN SHEA-STONUM, Bankruptcy Judge.

This matter came before the Court on the Motion to Dismiss (the "Motion") filed by the United States Trustee ("UST"). The Motion seeks dismissal of this case pursuant to 11 U.S.C. § 707(b) and was the subject of an evidentiary hearing before this Court.

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(a) and (b)(1) and by the Standing Order of Reference entered in this District on July 16, 1984.

## I. FINDINGS OF FACT

Based upon the testimony and other evidence admitted at the hearing, the following facts are undisputed.

### A. *Debtor's Indebtedness*

On October 13, 1998, Erminia Reese ("Debtor") filed a petition under chapter 7 of the Bankruptcy Code. Debtor has a 12 year-old son from a prior marriage. On February 22, 1997, she had married her current spouse, Timothy Reese ("Reese").

Debtor lists no secured or priority unsecured debt in her Schedules. Debtor lists nonpriority unsecured claims in an aggregate amount of $73,715.17. The consideration for the entirety of this unsecured

debt, which involves 15 separate credit accounts, is described as "Miscellaneous Credit Purchases." [Schedule F]. The original charges to these accounts were made largely after Debtor's first marriage ended and prior to her second marriage. After the second marriage, the balances increased when Debtor took cash advances to make the minimum monthly payments due on her credit cards. [Exhibits 3, 5 and 6]. Prior to her bankruptcy filing, the minimum monthly payments which Debtor was obligated to make with respect to this debt aggregated to $1,448.00 per month. [Exhibit 7].[1]

In September 1998, Debtor sought consumer credit counseling in an overdue effort to address her overwhelming indebtedness. In light of the amount of her indebtedness and the amount of her income, Debtor testified that the consumer credit counseling agency determined that meaningful non-bankruptcy relief was not available to her. Debtor also came to the conclusion that she could no longer use her credit cards and stopped doing so.

### B. *Debtor's Income and Expenses*

Since September 1998, Debtor has been employed as a dental secretary. Before that she was employed for approximately five years as an operations manager at a particular store in a chain of retail stores, for which she received a salary comparable to her current salary. Debtor has net monthly income of $1,461.16, which includes $263.16 per month in child support which Debtor receives for her son. Reese has net monthly income of $2,331.65. [Exhibit 1]. Debtor, her son and Reese have cumulative monthly expenses of $3,413.00. [Exhibit 1, as modified by Debtor's testimony]. Those monthly expenses include $388.00 per month payable with respect to Reese's 1996 Chevrolet Blazer and $515.00

in aggregate monthly payments for three credit cards held in Reese's name. [Exhibit 1, as modified by Debtor's testimony].

### C. *Debtor's Assets*

Debtor's assets have an aggregate value of $7,710.00. Those assets include a wedding ring with a declared value of $1,000.00, and a 1993 Pontiac Sunbird with a declared value of $3,500.00. [Schedule B]. Debtor does not own a home, but lives in an apartment with her son and Reese.

Pursuant to a compromise with her chapter 7 trustee approved by the Court, after notice to all parties in interest, Debtor has agreed to pay $300.00 per month, for nine months beginning in January 1999, to the chapter 7 trustee. This payment approximates the funds which would be available to Debtor's creditors if the chapter 7 trustee were to liquidate Debtor's wedding ring and Pontiac Sunbird. At the conclusion of that payment obligation, at least the monthly amount now being paid to the chapter 7 trustee is not necessary to meet Debtor's currently identified budgeted expenditures.

### D. *Reese's Indebtedness*

Reese is a store manager. Reese and Debtor did not speak about their accumulated debts before their marriage, and they maintain separate bank accounts. Before his marriage, Reese had approximately $3,000 to $5,000 in credit card debt. His debt increased substantially after his marriage to Debtor, to approximately $24,000.

In April 1999, Reese went to consumer credit counseling. Through consumer credit counseling, Reese has been able to reduce his credit card payments from approximately $610.00 per month to $515.00

---

1. No holder of an unsecured claim has objected either to the discharge of its debt or to Debtor's general discharge. Therefore, the only information that the Court has in regard to these accounts is derived from Debtor's testimony and records. Debtor requested that each of her credit card issuers disclose information regarding their individual credit account with Debtor to her attorney [Exhibit 2] but received a limited response [Exhibits 3 through 6].

per month and intends to pay the principal and reduced interest in full. Reese has no significant assets which could be liquidated to pay his or Debtor's debts. Therefore, the excess of his income over expenses will be used for a substantial period into the future to address his obligations to his separate creditors.

Debtor and the UST have stipulated that the bulk of Debtor's debt was incurred prior to her marriage to Reese.[2] Nevertheless, in light of Reese's income, the UST asserts that granting Debtor relief under chapter 7 would be a "substantial abuse."

## II. CONCLUSIONS OF LAW

■ Section 707(b) of the Bankruptcy Code provides in pertinent part that "the court ... may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor." 11 U.S.C. § 707(b).

■ In the context of section 707(b) of the Bankruptcy Code, the Sixth Circuit Court of Appeals has held that "[s]ubstantial abuse can be predicated upon either lack of honesty or want of need." *In re Krohn,* 886 F.2d 123, 126 (6th Cir.1989). The UST does not contend that this case presents the situation of a "lack of honesty" and has predicated the Motion on Debtor's alleged want of need. In *Krohn,* the Sixth Circuit Court of Appeals described the following factors for evaluating "want of need":

> Among the factors to be considered in deciding whether a debtor is needy is his ability to repay his debts out of future earnings. That factor alone may be sufficient to warrant dismissal. For example, a court would not be justified in concluding that a debtor is needy and worthy of a discharge, where his disposable income permits liquidation of his consumer debts with relative ease. Other factors relevant to need include whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

*Krohn,* 886 F.2d at 126–27.

Were it not for Reese's income, there would be no issue regarding Debtor's eligibility to file a case under chapter 7 of the Bankruptcy Code. Debtor's future income, while apparently stable, is modest, particularly as contrasted to that of Mr. Krohn.[3] Debtor's expenses, which the UST has not portrayed as excessive, cannot be reduced significantly. Similarly, when Debtor sought consumer credit counseling prior to filing her bankruptcy case, she learned that the amount of her indebtedness, in comparison with her income, precluded meaningful non-bankruptcy relief.

Debtor's disposable income does not permit liquidation of her consumer debts "with relative ease." Dividing the joint expenses of Debtor's family in half (that is, all of the expenses listed on Debtor's

---

2. After her marriage to Reese, Debtor used her credit cards to pay the airfare for a vacation in Florida with her son and Reese and for a computer for her family. In Schedule B, Debtor lists a½ interest in the computer, which interest is valued at $500.00. Debtor stopped using her credit cards in September 1998, after she sought consumer credit counseling.

3. Mr. Krohn was a financial business manager with a large industrial firm whose annual compensation had risen from approximately $56,000 in 1985 to an amount estimated between $75,000 and $80,000 in 1987.

Amended Schedule I, other than Reese's monthly car and credit card payments), Debtor's monthly net income of $1,461.16 would exceed Debtor's share of monthly expenses of $1,155.00 by $306.16 per month.[4] *In re Attanasio*, 218 B.R. 180, 234–35 (Bankr.N.D.Ala.1998) (holding that, when the debtor is not the sole provider for the family unit, the "appropriate measure of the debtor's ability to pay for purposes of 707(b) would ... be the debtor's sole income minus a one-half share of the family living expenses"); *In re Haffner*, 198 B.R. 646, 649 (Bankr.D.R.I.1996); *but see* n. 5, *infra*. Under a three-year chapter 13 plan, after payment to the chapter 13 trustee and standard attorney's fees, Debtor's unsecured creditors would receive less than 15% of their allowed claims, an amount which is far less than the payment percentages which courts have held to be sufficient for dismissal of a case under section 707(b). *See, e.g., U.S. Trustee v. Harris*, 960 F.2d 74 (8th Cir. 1992) (affirming dismissal of case under section 707(b) when debtors' adjusted income and expenses would enable them to pay 156% of their unsecured debt within three years). *In re Matias*, 203 B.R. 490 (Bankr.S.D.Fla.1996) (dismissing case under section 707(b) when debtor could pay all unsecured creditors 100% over a six month period using debtor's monthly adjusted net disposable income); *In re Snow*, 185 B.R. 397 (Bankr.D.Mass.1995) (dismissing case under section 707(b) when debtors' alleged monthly net disposable income would yield payment of 81% of their total indebtedness over three years).[5] Therefore, based on Debtor's income alone, the UST cannot rebut the "presumption in favor of granting the relief requested by the debtor," *i.e.*, Debtor's choice of a chapter 7 bankruptcy filing.

The UST acknowledges that all of the credit accounts listed in Debtor's Schedules were initiated before her marriage to Reese. In short, Debtor's creditors did not rely on the repayment capability of any individual other than Debtor. Further, the UST has not shown any significant benefit which Reese has derived from Debtor's expenditures prior to her marriage to Reese, *e.g.*, furnishings, real property or other assets. Nevertheless, the UST contends that Reese's income should be available for the repayment of Debtor's accounts established prior to her marriage to Reese.

■ Reese's income is relevant for the Court to evaluate how much of Debtor's income is required to pay for her, and her son's, food, clothing, shelter and other necessities. As explained by the court in *In re Berndt*, 127 B.R. 222 (Bankr.D.N.D. 1991):

> [I]n calculating whether there is discretionary income available to fund a plan one must, of necessity, observe to what degree a debtor's daily living expenses are shared as co-obligations of the non-debtor spouse or are assumed completely by that spouse.... To be clear, the non-debtor spouse's income is not being rendered liable for the debts of the Debtor but rather is simply being considered in determining whether the Debtor himself has available discretionary income by virtue of the fact that he and the non-debtor spouse share a joint household.

*Id.* at 225. *See also Haffner*, 198 B.R. at 649.

---

4. Until October 1999, in order to "buy-back" the non-exempt equity in her wedding ring and her 1993 Pontiac Sunbird, Debtor will utilize $300.00 of that amount per month to make payments to the chapter 7 trustee.

5. This Court had previously tried to divine from various Code provisions a percentage dividend that would presumptively support dismissal under section 707(b). *In re Messenger*, 178 B.R. 145, 149–50 (Bankr.N.D.Ohio 1995). I now recognize that such an interpretation was open to the potential manipulation of intentionally adding to the pre-filing debt load to fall below the 70% dividend level discussed in *Messenger*. The problem is more complex.

Debtor, her son and Reese live as a family unit and do not rely on Debtor's income alone to pay for joint expenses. Consequently, in determining the amount of Debtor's disposable income, it is appropriate to apply Reese's income to the payment of one-third to one-half of these joint expenses.[6] However, in the circumstances of this case, neither section 707(b) nor *Krohn* require that the Court consider the entirety of Reese's income when determining whether or not Debtor is eligible to file a chapter 7 case. In short, even if he had excess income after this analysis, which happens not to be the case here, it is the debtor's "excess income," not that of the non-debtor spouse, that is the focus of the inquiry.

■ Debtor incurred the bulk of her unsecured debt prior to her 1997 marriage to Reese. Debtor's creditors did not rely on Reese's income when they extended credit to her. As this Court has noted previously, "[i]t is not the function of a federal bankruptcy court to reconfigure the terms on which credit was extended to individuals into ex post facto joint and several obligations. Indeed to do so would be inconsistent with other statutes incorporating important federal policies. *See* Equal Opportunity Act, as amended, 15 U.S.C. § 1691." *Messenger,* 178 B.R. at 149. *See also In re Benedict,* 147 B.R. 104 (Bankr.W.D.Pa.1992) (noting that case would not be dismissed under section 707(b); debtor remarried seven months after he filed his bankruptcy case and mo-

tion to dismiss would be based on the income of debtor's new wife). Moreover, requiring a new spouse to shoulder a debtor's premarital indebtedness, by precluding the debtor from filing a chapter 7 case because of the *spouse's* income, would create a disincentive for someone to marry an individual who has significant unsecured indebtedness. There is nothing currently in the Bankruptcy Code which leads this Court to conclude that Congress intended to impose such a reverse dowry.

This is the second case brought by the UST in this Court where the argument has been that the only option available to a newly married couple with separate debt is to require the non-debtor spouse to file jointly with the current debtor. *Messenger, supra.* If accepted, the argument would result in substantially lower payment of the separate creditors of the non-debtor spouse and some slight incremental increase in the dividend paid to the debtor's separate creditors. It also would leave the non-debtor spouse with the black mark of bankruptcy rather than the gray mark of consumer credit counseling on his or her credit record. On the current state of the law, this Court must question why the UST believes that public resources should be directed to such situations. The Court can understand why this file would be scrutinized by the UST, but cannot understand why, after full discovery of the consumer credit counseling history of both Debtor and her spouse, and other facts discussed herein, the motion was not withdrawn.[7]

---

6. Given all of the other facts of this case, it is unnecessary for the Court to address the precise ratio that would be applicable where the debtor has a dependent child from a former marriage. Further, throughout the calculations contained in this opinion, I have included in Debtor's "income" the child support payments that she receives. However, I am strongly of the view that child support payments should be applied prospectively for the benefit of the child, not to the retirement of parental debt.

7. The Court understands that the UST might not have been aware of all the facts of this case when the UST brought the Motion. Con-

sequently, after the conclusion of Debtor and Reese's testimony at the hearing, the Court asked counsel for the UST whether the UST would have brought the Motion, based upon the specific factual pattern of this case, if the UST had been in possession of all the facts at the outset. Counsel for the UST responded that the UST probably would have brought the Motion, because the UST bases its decision to bring such motions on the total income of the household, the total unsecured debt of the household and the total payments that could be available to pay the unsecured debt of the household. Counsel for the UST

Because Debtor's disposable income does not permit liquidation of her debts with relative ease, Debtor's honesty has not been questioned, and Debtor's new husband has a substantial separate debt burden that he has chosen to address through consumer credit counseling, which choice he should not be denied, Debtor is entitled to proceed with her chapter 7 case. Therefore, the Motion shall be, and hereby is, denied.

**IT IS SO ORDERED.**

cited no Code provision that supports such an analysis on the facts of this case.