**In re Mike RYSSO, Debtor.**

**No. BKY 04–43622.**

United States Bankruptcy Court, D. Minnesota.

Jan. 28, 2005.

Barbara J. May, Arden Hills, MN, for Debtor.

## MEMORANDUM OPINION AND ORDER

ROBERT J. KRESSEL, Bankruptcy Judge.

This case came on for hearing on December 1, 2004 on a motion by the United States Trustee to dismiss this Chapter 7 case pursuant to 11 U.S.C. § 707(b). Michael R. Fadlovich appeared on behalf of the United States Trustee and Barbara J. May appeared on behalf of the debtor.

This court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334, and Local Rule 1070–1. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).

### FACTS

Mike Rysso was a pilot for Northwest Airlines. He was convicted of tax evasion in May 2003 and has been unemployed since June 2003. As a result of his conviction, he is no longer employable, in any capacity, in the airline industry because he is considered a security risk. He has no income, and has limited earning potential. With a felony conviction, it is difficult for him to find a job that could make up for the increased daycare costs of caring for his youngest child.

As part of his sentence, the debtor received 45 days in jail and is required to do 1,600 hours of community service. He had been doing community service full time and had completed 1,250 hours with 350

still remaining. In October 2004, the Hennepin County District Court ruled that he must spread his remaining hours of community service out over three years. He is currently volunteering 15–20 hours per month and in the remaining time he is caring for his two young children.

Jennifer H. Rysso, the debtor's wife, has been employed for over eight years as a physician in internal medicine with Park Nicollet Health Services. While the debtor was employed, Dr. Rysso worked part time, but after his conviction and loss of employment, she began working full time. According to their tax returns, the Ryssos' gross income for 2003 was $214,910.00. This amount represented the debtor's earnings of $32,627.15 and Dr. Rysso's earnings of $182,282.77. Dr. Rysso's gross income averages $16,564.67 per month.[1] Her average monthly deductions include: (a) $4,699.92 for state and federal taxes, (b) $289.10 for the family's health, dental, and life insurance, (c) $416.67 for pre-tax child care reimbursement, and (d) $940.13 for pension and 401(k) plan loan reimbursements.[2] This leaves her with about $10,000 per month in net income. The debtor had no income for 2004 and has no prospects for meaningful income in the future.

The debtor listed $9,940 in household expenses on his Schedule J. Based on the evidence presented during trial and in the parties' stipulation of facts, the number is closer to $8,400.00. The differences include a reduction in fees owed to a homeowner's association, a reduction in heating and electrical costs, and a reduction in child care expense. The debtor's older daughter is no longer in daycare because she attends school full time and daycare for his younger child costs between $820–$830 per month. However, the actual amount paid for child care out of disposable income is reduced by the pretax, paycheck deduction of $416.67 for a total net cost of roughly $413.33.

The monthly expenses do not include a restitution payment the debtor must pay to Hennepin County as part of his conviction for tax evasion. As of the date of trial $12,500.00 remains unpaid and must be paid by December 2005. The nature of the restitution is unclear. If it is the balance of taxes and related unpaid interest and penalties it could be a priority claim under 11 U.S.C. § 507(a)(8). In any case it is likely a non-dischargeable debt under 11 U.S.C. § 523(a)(1), (2) or (7). The household expenses are paid entirely by Dr. Rysso who is currently working 80–90 hours per week. Based on Dr. Rysso's net monthly income of about $10,000 and the family's expenses of $8,400.00, Dr. Rysso has about $1,600.00 in disposable monthly income.

The debtor filed a voluntary Chapter 7 bankruptcy petition on June 29, 2004 listing $68,807.00 in consumer debt.[3] On September 22, 2004 the United States Trustee filed a motion to dismiss the case pursuant to 11 U.S.C. § 707(b).

## DISCUSSION

The United States Trustee argues that the debtor's Chapter 7 bankruptcy case should be dismissed because the debtor's discharge would constitute a substantial abuse under 11 U.S.C. § 707(b). 11 U.S.C. § 707(b) provides in pertinent part:

---

1. The amount fluctuates based on contract changes.

2. In December 2003 the debtor paid the Minnesota Department of Revenue $43,000. To fund this payment Dr. Rysso borrowed from her pension fund and 401(k) plan and is now paying back the loans.

3. The debtor did not include his restitution debt in his schedules.

"[T]he court, on its own motion or on a motion by the United States Trustee ... may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter." The U.S. Trustee claims that the debtor can fund a Chapter 13 plan that could repay a substantial portion of his unsecured debt within three years.

■ There is no dispute that the debtor's debts are primarily consumer debts. The term "substantial abuse" is not defined in the Bankruptcy Code, but legislative history indicates that the intent of the provision was to stem the use of Chapter 7 relief by unneedy debtors. *In re Walton,* 866 F.2d 981, 983 (8th Cir.1989). In the Eighth Circuit, the primary consideration in a substantial abuse case is whether a debtor is able to pay the debtor's debts from future income. That ability is measured by the feasibility of funding a hypothetical Chapter 13 plan. *Id.*

■ The ability to pay creditors with future income, warrants the dismissal of a Chapter 7 petition for substantial abuse. *Stuart v. Koch,* 109 F.3d 1285, 1288 (8th Cir.1997); *In re Walton,* 866 F.2d at 985. In *Walton,* the court found that a discharge for a debtor who could pay more than two-thirds of his debts in a three year plan was a substantial abuse. "The ability of the debtor to pay a substantial portion of his unsecured debt under a Chapter 13 plan is, in itself, sufficient grounds to dismiss the Chapter 7 petition for substantial abuse." *U.S. Trustee v. Harris,* 960 F.2d 74, 77 (8th Cir.1992).

The phrase "disposable income" is borrowed from Chapter 13. Under a Chapter 13 plan, if there is an objection, all of the debtor's disposable income must go toward plan payments. 11 U.S.C. § 1325(b)(1)(B). Disposable income is defined as that amount of the debtor's income which is not reasonably necessary to be expended for maintenance and support of the debtor or the debtor's dependants. 11 U.S.C. § 1325(b)(2)(A).

■ The debtor in this case does not have a regular income to fund a Chapter 13 plan and his prospects for employment in the future are minimal because of his conviction. However, the U.S. Trustee argues that the debtor's wife's income should be substituted for the debtor's to create the necessary income to fund a plan.

■ The method for calculating disposable income for purposes of 11 U.S.C. § 707(b) boils down to a fairly simple formula. You calculate the debtor's gross income (I); subtract such things as federal and state withholding taxes and FICA (W); then subtract the necessary expenses for the maintenance or support of the debtor or the debtor's dependants (E). The result is disposable income (DI). For the debtor, $I = 0$, $W = 0$, $E = 8,390.37$. The resulting disposable income equals $-8,390.37$. In cases in which the debtor is married and the spouse has not filed bankruptcy, it is widely accepted that the nondebtor spouse's income should be considered in determining the debtor's disposable income.[4] In all these cases however, both the debtor and the nondebtor spouse have income. The debtor in this case has no income to contribute.

The cases cited differ in how they consider the nondebtor spouse's income. In *In re Berndt,* the court indicated that the

---

4. Examples of this include: *In re Bottorff,* 232 B.R. 171 (Bankr.W.D.Mo.1999); *In re Bicsak,* 207 B.R. 657 (Bankr.W.D.Mo.1997); *In re Dempton,* 182 B.R. 38 (Bankr.W.D.Mo.1995); *In re Wilkinson,* 168 B.R. 626 (Bankr. N.D.Ohio 1994); *In re Reese,* 236 B.R. 371 (Bankr.N.D.Ohio 1999); *In re Harmon,* 118 B.R. 68 (Bankr.E.D.Mich.1990); *In re Berndt,* 127 B.R. 222 (Bankr.D.N.D.1991).

non-debtor spouse's income should not be made liable for debts incurred by the debtor. The court stated that the nondebtor spouse's income is "simply being considered in determining whether the *debtor himself* has available discretionary income by virtue of the fact that he and the non-debtor spouse share a joint household." *In re Berndt,* 127 B.R. at 225 (emphasis added). The court in *In re Reese* took the same approach by considering the effect the nondebtor spouse's percentage contribution to the household reduces the debtor's expenses.[5] *In re Reese,* 236 B.R. at 376.

In terms of the formula, the spouse's income is used to reduce E, which results in a greater DI. This differs from the analysis in *In re Dempton* and *In re Bicsak* where the court, in both cases, considered child support payments to the nondebtor spouse as an increase in the debtor's income. These courts seem to be adding the spouse's income to increase I which has the same result of increasing DI.

In the first two cases, the nondebtor spouse's income is considered a reduction in expenses and in the second two it is added to the debtor's income. In all four cases, it did not matter if the non-debtor's income was considered an addition to income or a reduction in expenses. Whether you add the spouse's income to the top line of the equation or use it to reduce the third line, the resulting bottom line is the same.

■ In this case it matters. The debtor does not have any income with which to fund a plan. The U.S. Trustee proposes to use Dr. Rysso's income to determine if the debtor can fund a plan. Put another way, the U.S. Trustee proposes requiring the Rysso's to file a joint Chapter 13 case. Under Eighth Circuit precedent, this is not the proper way to consider the non-debtor spouse's income. Her income should only be considered as a reduction in joint, household expenses, but cannot be considered as an increase in income.

■ A substantial abuse analysis in the Eighth Circuit must focus on whether the *debtor* has the ability to pay a substantial portion of the debtor's unsecured debt with future income. *Fonder v. U.S.,* 974 F.2d 996, 999(emphasis added). This is determined by the debtor's ability to fund a hypothetical Chapter 13 plan. The U.S. Trustee wants to expand the Eighth Circuit's rule to include situations where the debtor and the debtor's non-filing spouse could jointly fund a Chapter 13 plan. I believe this is an inappropriate reading of 11 U.S.C. § 707(b) and an inappropriate application of Eighth Circuit case law and I decline to adopt it.

■ Following the reasoning in *In re Reese,* if half of the household expenses are apportioned to Dr. Rysso, the formula looks like this: 0—0—$4,195.85 = -$4,195.85. In the present case, Dr. Rysso pays 100% of the family's expenses. Even if you use Dr. Rysso's income to eliminate the household expenses, the debtor's disposable income remains the same. The formula then looks like this: 0—0—0 = 0. No matter how you calculate it, the *debtor* has no disposable income.

Dr. Rysso is not trying to walk away from the family's responsibilities. Far from it. She paid the debtor's delinquent tax liability by borrowing from her 401(k) and pension plans and it is likely she will need to do this again before December 2005 to pay off the debtor's restitution. Dr. Rysso has also made significant

---

5. The court ruled that a proper apportionment for joint expenses between the debtor and the nondebtor spouse is between one-third to one-half, depending on the circumstances.

changes in her life. Prior to the debtor's conviction, she worked part time but has since been working 80–90 hours per week to support her family and pay a good portion of her husband's debt. In addition, she has cosigned $12,000 of the debtor's consumer debt for which she will be responsible whether the debtor receives a discharge or not.

### CONCLUSION

Even after considering his wife's income, the debtor still has no disposable income with which *he* could fund a Chapter 13 plan. Granting him a Chapter 7 discharge would not, therefore, be a substantial abuse of the provisions of Chapter 7.

### ORDER

THEREFORE, IT IS ORDERED:

The U.S. Trustee's motion to dismiss is denied.