BRIGHT, Circuit Judge,
concurring.
I join in Judge John R. Gibson’s opinion affirming the judgment in this case. I add another dimension to the reasons for the determinations of the bankruptcy court and the district court on appeal discharging the student loans for “undue hardship.”
The dissent asserts the debtor has sufficient surplus ($700 per month) to pay her student loans ($502.49 per month on an extended thirty-year repayment plan). Infra at 537-38. That analysis is incorrect based on the record in this case, which is the record before the bankruptcy court and the district court.[7]
The total loans prior to this appeal amounted to $142,044.55 in March 2002. The debtor owed her five student lenders either $1641.05 per month over ten years, $1021.55 per month over twenty years, *535 $1218 per month for the first ten years of a thirty-year plan (two of the lenders do not participate in the Ford loan program, thus not allowing for a thirty-year repayment period), or $910.55 per month for the first twenty years of a thirty-year plan. However the loan obligations are added, the $700 per month in disposable income that the bankruptcy court allocated to Reynolds and her husband does not sufficiently cover any of these payments.
Moreover, the $700 per month surplus results from combined compensation of both Reynolds and her husband John Turner minus family living expenses. The record shows in a rough way that each contributed about equally to the family income and each incurred about equally to the family living expenses.
The appellants here would apply all of the surplus to the debtor’s educational debts. Yet, these debts were incurred pri- or to Reynolds’s marriage. The appellants and the dissent give no consideration to Mr. Turner’s interests. Mr. Turner is not a party to these proceedings, and there is no showing that he assumed to pay his wife’s loans. Attributing the entire surplus of $700 to the debtor’s loans requires Mr. Turner to pay for loans on which he is not obligated.
There is no warrant for such treatment of Mr. Turner. Equitably speaking, Mr. Turner should be entitled to approximately half of the surplus to put to his use to educate his children, to save for the future, or for any other reason. That is, the part of the surplus remaining after contribution to the basic household expenses and attributable to his income. Thus, in fact, under this record only about $350 of the surplus remains in the household budget that could be attributed to the debtor’s income.
This analysis is supported by the following cases: In re Innes, 284 B.R. 496, 507-08 (D.Kan.2002) (“[T]he bankruptcy court correctly considered all of [the non-debtor spouse’s] disposable income and applied the proportionate share of her income to the family’s essential or basic living expenses. To require her to do more would essentially force her (or her children) to pay debts for which she is not liable and support [the debtor husband] while being denied the right to apply some of her income to reasonable non-luxury items, such as the children’s education, and a modest retirement fund.”); In re Berndt, 127 B.R. 222, 225 (Bankr.D.N.D.1991) (holding, in a Chapter 7 consumer debt case, “[T]he non-debtor spouse’s income is not ... rendered liable for the debts of the Debtor but rather is simply ... considered in determining whether the Debtor himself has available discretionary income by virtue of the fact that he and the non-debtor spouse share a joint household.”).
The strongest case in support of the creditors’ view is In re White, 243 B.R. 498, 508-14 (Bankr.N.D.Ala.1999), where the court combined the non-debtor spouse’s and debtor’s incomes and then deducted household expenses to determine if a surplus existed. However, White is distinguishable because the debtor in that case attempted to avoid paying student loan debt by contributing toward household expenses far in excess of a minimal standard of living. See id. at 512-14. This case is also distinguishable from the context where a debtor chooses not to work to her earning capacity then seeks to discharge her student loans for lack of income. In re Murphy, 305 B.R. 780, 793-95 (Bankr.E.D.Va.2004); see In re Oyler, 397 F.3d 382, 386 (6th Cir.2005) (“Choosing a low-paying job cannot merit undue hardship relief.”).
While it is true that the income and expenses of husband and wife are combined for the purpose of examining a household’s finances, it does not seem *536 proper, in the circumstances where the debtor and non-debtor spouse have contributed about equally to the family income and expenses, to attribute the entire surplus to the debtor in favor of the debtor’s creditors.[8]
There is no showing that applying the $350 per month surplus, attributable to the debtor’s income, would reduce or retire the loans, considering interest growth on the debt. Additionally, given the nature of the debtor’s illness, the “$100 [per month] cushion for various aspects of her medical condition,” infra at 20, does not allow her a realistic reserve for possible deterioration of her health condition.

. The dissent asserts that the student loans require a payment of a little more than half ($502.49) of the amount ($910.55) determined by the district court. This legerdemain is accomplished by considering Reynolds's ability to pay after diminishing her debt to exclude student loans from two lenders who choose not to appeal. The dissent errs in two respects: (1) The record before us is that before the bankruptcy court and the district court. We have no warrant to change that record and become a fact finding court rather than the court of appeals. (2) What warrant is there for giving benefit to the remaining lenders for the decision of two lenders not to appeal? It seems to me their decisions not to appeal recognizes the correctness of the decisions in this case by both the bankruptcy court and the district court.

. The dissent mistakenly contends that "[t]his issue was not raised or briefed on appeal.” Infra at 537 n. 9. This court raised this issue at oral argument after which the parties filed letter briefs. It is not unusual for a court to recognize an issue important to an appeal and not raised by the parties. This court was well within its authority to ask the parties to brief this obvious issue when it was not presented below and the non-debtor husband is not a party to the case.