**In re William Patterson KAMEN, Maria Jean Kamen, Debtors.**

**Bankruptcy No. 98–62657.**

United States Bankruptcy Court, N.D. Ohio.

April 1, 1999.

276

Andrew Vara, Cleveland, OH, Office of the United States Trustee.

Thomas Budd, Ashland, OH.

### MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Bankruptcy Judge.

Pending before the Court is the United States Trustee's (UST) Motion to Dismiss the case filed under Chapter 7 of Title 11 of the United States Code by William Patterson and Maria Jean Kamen (Debtors). The Debtors filed a memorandum in opposition to the motion. A hearing was held following which the Court took the matter under advisement. For the reasons that follow, the UST's motion will be **GRANTED**.

### FACTS

On August 20, 1998, the Debtors filed a petition for relief under Chapter 7 of Title 11 of the United States Code. In their bankruptcy schedules, the Debtors list real property valued at $80,000.00 and personal property valued at $187,181.00. According to Schedule D, Creditors Holding Secured Claims, the real property is encumbered by two mortgages in the total amount of $77,837.00. A review of Schedule D reveals that the Debtors incurred these obligations in 1997. The Debtors testified at the hearing that they refinanced the home in March, 1997, and obtained a line of credit. The Debtors further testified that $20,000.00 was obtained from this line of credit to remodel the home. Specifically, the Debtors stated that they used the funds to replace carpeting, add new tile to the kitchen floor, and build a deck. Some of the funds were also used to repay a portion of their outstanding credit card debt. The Debtors testified that they believed the home improvements were necessary. At the time of the remodeling, the Debtors had substantial equity in the home. Mr. Kamen testified that they owed on their first mortgage approximately $55,000.00 on a home valued at $80,000.00. Further, Mr. Kamen testified that at the time of the remodeling, the Debtors owed approximately $140,000.00 in credit card obligations.

The Debtors' personal property includes an interest in three separate employee benefit plans with a combined value of approximately $184,161.00.[1] A review of Schedule G, Executory Contracts and Unexpired Leases, reveals that the Debtors entered into three automobile leases within approximately one year prior to the petition date. Specifi-

---

1. In Schedule B, Personal Property, Mr. Kamen lists an interest in a pension plan through his employer which he values at $77,921.00 but later testified it presently has a value of approximately $85,000.00. Mr. Kamen also lists an interest in a 401(k) plan valued at $54,235.00. Schedule B also reveals that Mrs. Kamen has an interest in a 401(k) plan through her former employer which is valued at $52,005.00.

cally, in August, 1997, the Debtors leased a 1997 Jeep Grand Cherokee because of Mrs. Kamen's former occupation which required extensive travel. Monthly payments on this vehicle were $565.35. The Debtors testified that they no longer have possession of this vehicle. At the time of this lease, the Debtors testified that they owed over $140,000.00 in credit card obligations. At approximately the same time, the Debtors also leased a 1997 Toyota Corolla for their son which requires a monthly payment of $99.00. Lastly, five days before filing their Chapter 7 petition, the Debtors leased a 1998 Toyota Camry requiring monthly payments of $323.60. It was determined at the hearing that the Debtors used Mrs. Kamen's unemployment compensation to make the $445.00 down payment on this latest lease.

The Debtors list general unsecured claims in the amount of $163,055.00 which, as noted, consist substantially of credit card debt.[2] In fact, the Debtors have listed in Schedule F, Creditors Holding Unsecured Nonpriority Claims, twenty-eight separate obligations on credit cards which they have obtained over the past twenty-five years. It was determined at the hearing that the Debtors' credit card obligations have steadily increased since 1995, even though Mrs. Kamen lost her employment in 1997. Specifically, the Debtors' credit card obligations increased from approximately $100,000.00 in 1995 to over $140,000.00 in 1997. In addition, in the year prior to the petition date, the Debtors' credit card obligations increased approximately $20,000.00 to a total of approximately $161,-000.00.

At the hearing, Mr. Kamen, who is 51 years old, testified that he has been employed as a cost accountant for approximately 27 years with Armco, Inc. One of Mr. Kamen's responsibilities in this position is to produce budgets for his company's operations. Mr. Kamen's testified that his annual income is approximately $56,000.00. Mrs. Kamen, who is 49 years old, is currently unemployed, having lost her position with Value City in November, 1997. The Debtors have no dependents. At the hearing, Mrs. Kamen testified that she no longer receives unemployment compensation and has been unsuccessful in obtaining new employment. The Debtors' Statement of Financial Affairs reveals that they earned over $100,000.00 in combined salary in both 1996 and 1997. Schedule I, Current Income of Individual Debtors, reveals that the Debtors report a combined monthly net income of $2,924.20, which may be higher considering that Mr. Kamen makes a voluntary contribution to his company's 401(k) plan and has received bonuses in the amounts of $11,000.00 and $10,-000.00 in 1997 and 1998, respectively. The Debtors estimate their monthly expenses to be $2,930.00, which includes payments of $932.00 on the home mortgages and $418.00 on the leased vehicles.

## DISCUSSION

The Court has jurisdiction in this contested matter by virtue of Section 1334(b) of Title 28 of the United States Code and General Order No. 84 entered in this district on July 16, 1984. This is a core proceeding under Section 157(b)(2)(A) of Title 28 of the United States Code. This Memorandum of Decision constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### Dismissal Pursuant to 11 U.S.C. § 707(a)

 The UST has moved to dismiss the Debtors' case under 11 U.S.C. § 707(a) & (b).[3] The list of circumstances in which a

---

**2.** The Debtors have not scheduled any priority unsecured claims.

**3.** 11 U.S.C. § 707 provides in pertinent part:

 (a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—
 (1) unreasonable delay by the debtor that is prejudicial to creditors;

 (2) nonpayment of any fees and charges required under chapter 123 of title 28 [28 U.S.C. §§ 1911 et seq.]; and
 (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

court may dismiss a case "for cause" is non-exclusive, and includes the requirement that a debtor's petition be filed in good faith. *See, Industrial Insurance Services, Inc. v. Zick (In re Zick)*, 931 F.2d 1124, 1127 (6th Cir.1991). The Sixth Circuit has explained that dismissal for lack of good faith "should be confined carefully and is generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish lifestyle, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence." *Id.* at 1129. Bad faith can be established by a debtor's failure to significantly reduce his or her lifestyle to pay creditors. *Id.* at 1128. The Sixth Circuit, in *Zick,* cited with approval a decision from this district which stated that "[a]lthough the jurisdictional requirement of good faith is not explicitly stated in the statute, it is inherent in the purposes of bankruptcy relief." *Id.* at 1129 *citing McLaughlin v. Jones (In re Jones)*, 114 B.R. 917 (Bankr.N.D.Ohio 1990). The *Jones* court also commented that:

> [T]he Bankruptcy Code is intended to serve those persons who, despite their best efforts, find themselves hopelessly adrift in a sea of debt. Bankruptcy protection was not intended to assist those who, despite their own misconduct, are attempting to preserve a comfortable standard of living at the expense of their creditors. Good faith and candor are necessary prerequisites to obtaining a fresh start. The bankruptcy laws are grounded on the fresh start concept. There is no right, however, to a head start. Therefore, the good-faith requirement is appropriately imposed by the bankruptcy court.

*In re Jones,* 114 B.R. at 926 (citations omitted).

The UST argues that the Debtors filed their petition in bad faith under § 707(a) by consistently abusing credit cards to preserve a standard of living above that which they could afford. The Debtors counter that they have not lived such an expensive or extravagant lifestyle as to warrant a dismissal of their Chapter 7 case. The Debtors also claim that based on their current income, they will be unable to fund a Chapter 13 plan to pay unsecured creditors at least 70% of their claims so that they could later seek relief under Chapter 7. *See,* 11 U.S.C. § 727(a)(9).

The Court, pursuant to 11 U.S.C. § 707(a), finds itself in agreement with the UST. As mentioned earlier, the Debtors have listed twenty-eight separate credit card obligations totaling approximately $161,569.00. The Debtors' only other unsecured claim consists of a medical bill for $1,486.00. The evidence presented at the hearing established that on the petition date, the average balance owed on the credit cards in the approximate amount of $5,500.00 exceeds the Debtors' gross monthly income. In fact, Mrs. Kamen testified that her entire net monthly income was used to make minimum payments on the credit cards. Despite this, however, the Debtors continued their use of credit cards to maintain a lifestyle which far exceeded their income.

The evidence demonstrated that the Debtors' credit card balances increased from approximately $100,000.00 in 1995 to $140,000.00 in 1997 and ultimately climbed to a figure, as of the petition date, of approximately $161,000.00. This was in spite of the fact that Mrs. Kamen lost her position in 1997 and has been unsuccessful in obtaining new employment. Furthermore, the Debtors admitted that they went on a Caribbean cruise after Mrs. Kamen lost her employment. The Debtors also admitted taking trips to Florida and Michigan in 1997. The UST provided evidence that the Debtors were above the credit limit on two credit cards and were being assessed late fees for another. *See,* Exhibits M–O. Mr. Kamen also admitted that he would make purchases up to the credit limit on each credit card when that

---

(b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor ...

11 U.S.C. § 707.

credit limit was increased. The Court finds all of this evidence to be especially disturbing considering Mr. Kamen's employment as a cost accountant in which he testified that he is responsible for creating budgets for his company. Unfortunately, Mr. Kamen failed, for whatever reason, to use his skills in accounting to create a budget for himself and his wife. The evidence presented clearly showed a lack of fiscal restraint and a substantial abuse of credit cards.

The UST presented additional evidence of the Debtors' lack of budgetary restraint. For example, in 1995, the Debtors took out a loan in the approximate amount of $21,000.00 from their 401(k) plan, a significant portion of which, perhaps $10,000.00 to $15,000.00, was used to pay for their daughter's wedding. Their rationale for this expenditure was simply that persons of their ethnic heritage believe in large weddings. The credit card balance at that time exceeded $100,-000.00. In 1997, the Debtors traded the equity in their home by refinancing the mortgage and obtaining an equity line of credit in the amount of $20,000.00 which was used to remodel the home. As mentioned earlier, the Debtors owed over $140,000.00 in credit card debt at the time of refinancing. Thus, the Debtors chose to remodel their home rather than pay mounting credit card debt. It must be noted that the refinancing and most of the vacations occurred while Mrs. Kamen was employed and able to contribute in paying the credit card debt.

Also, as mentioned earlier, the Debtors leased three vehicles within a year of the petition date. In fact, the Debtors leased a 1998 Toyota Camry within five days of the petition date and used Mrs. Kamen's unemployment compensation to make the down payment on the lease. One of the vehicles, a 1997 Toyota Corolla, is being used by the Debtors' son, who is 23 years old, but is not making payments toward the lease. In total, the Debtors make monthly payments of $418.00 toward these vehicles. Based upon this evidence, the Court finds that the Debtors have recklessly accumulated an excessive amount of unsecured credit card debt in order to fund a lifestyle which, although argu-ably not extravagant, certainly was beyond their ability to afford, as they should well have known, considering Mr. Kamen's financial sophistication as an accountant.

The Debtors' rely upon a case entitled *In re Messenger*, 178 B.R. 145 (Bankr.N.D.Ohio 1995). Their reliance is misplaced. The Debtor in *Messenger* listed unsecured claims of $16,913.26 through the use of five credit cards and a loan from a credit union, totaling slightly more than 10 percent of the Kamens' unsecured indebtedness. The Debtor in that case also had to support a disabled child and there was no evidence of any "eve of bankruptcy" purchases as occurred here. In short, it simply does not appear that the Debtor in *Messenger* engaged in the type of credit card abuse which has occurred in the present case.

The Debtors' additional argument that they will be unable to fund a Chapter 13 plan if their Chapter 7 case is dismissed is also not persuasive. Mr. Kamen has been engaged in stable employment for the past twenty-seven years and makes approximately $56,000.00 a year not including bonuses of approximately $21,000.00 which he has received in the past two years.[4] Mrs. Kamen also has significant employment experience in the retail industry which should allow her to obtain employment in order to assist in making payments to creditors. The Debtors also have approximately $185,000.00 in retirement funds, a portion of which could be used to repay creditors.

The Court also does not accept the Debtors' argument that the credit card companies should be held responsible for their spending habits. As mentioned earlier, Mr. Kamen is an accountant experienced in budgetary matters, which experience should have been used in exercising personal restraint. The Court finds credit provided by these companies, although tempting, is a privilege which should be used with the expectation that debt incurred must eventually be repaid. Accordingly, the Debtors' Chapter 7 petition will be ordered **DISMISSED.**

---

**4.** Mr. Kamen also makes a voluntary contribu-tion to his 401(k) plan.