**W. Clarkson MCDOW, Jr., U.S. Trustee, Appellant,**

v.

**William Carl SMITH, Appellee.**

**No. CIV.A. 03–30–A.**

United States District Court, E.D. Virginia, Alexandria Division.

June 23, 2003.

---

Jack Ira Frankel, Office of United States Trustee, Alexandria, VA, for Plaintiff.

Stephen E. Leach, Leach Travell P.C., McLean, VA, for Defendant.

### *MEMORANDUM OPINION*

ELLIS, District Judge.

In this bankruptcy appeal, the appellee, a debtor with a significant debt to the Internal Revenue Service ("IRS"), seeks to discharge this debt even though, by any fair standard, his annual income is munificent, and he spends much of it on private education for his children and the rental of his large and expensive family home. This case, one of first impression in this circuit, presents the following novel questions: (1) whether "cause" for dismissal under 11 U.S.C. § 707(a) includes a debtor's lack of good faith; and if so, (2) whether the facts presented here reflect a lack of good faith on the part of this debtor.

### I.[1]

Appellee, William Carl Smith ("debtor"), is fifty-seven years old, married with five children, four of whom reside with him and his current spouse at their home.[2] His current spouse does not work outside the home.

The debtor attended both college and graduate school, earning a bachelor's degrèe from Georgia Tech University and an M.B.A. from Stanford University. Thereafter, since the early 1970's, he has been engaged in commercial real estate ventures, including development and ownership of several commercial office buildings

---

**1.** These facts are derived from the bankruptcy court's bench ruling. *See In re William Carl Smith,* Case No. 02–82137 (Bankr.E.D.Va. October 23, 2002) (Transcript).

**2.** The fifth child resides with the debtor's former spouse.

in Washington, D.C. Although he prospered for some period of time, the 1989 real estate market decline apparently caused the debtor to suffer some economic setbacks that led to a significant loss of income, and in 1991, to the loss of his home to foreclosure. In 1996, he surrendered his various real estate partnership interests to his business partners in order to satisfy debts secured by those interests. This surrender was a taxable event resulting in a significant federal income tax liability of approximately $3.2 million, which, with penalties and interest, has now grown to approximately $5.1 million.

In 1998, the debtor submitted a proposal to the IRS offering to pay approximately $80,000 of the total tax debt owed. This amount constitutes two cents on the dollar, and is the same proportional amount he agreed to pay in the settlement of his state tax debt with the Virginia Department of Taxation. The IRS declined this offer, and the debtor appealed, but his offer was again refused. The IRS made a counteroffer: the debtor would be allowed to satisfy his entire tax debt by paying $289,000, if paid within 90 days or $580,000 if paid over a longer period of time. The debtor refused this counteroffer.

The debtor's total debt to all creditors is $5,461,986.85, the lion's share of which is the $5,135,464.66 owed to the IRS. The IRS debt is largely unsecured, and moreover, the debtor has few assets to which an IRS lien might attach.

The debtor is currently employed by Peterson Companies, a real estate development firm. He is a salaried employee, without an ownership interest, and his annual compensation is $250,000. He also receives incentive bonuses that raise his annual salary to $454,000. His schedule of income filed in this case states that his monthly take-home pay is $28,843. His filings also reflect that his savings consist of a small 401(k), with a balance net of loans of slightly under $80,000. His monthly living expenses total $31,993, which sum includes the following expenditures: $6,618 per month for rental of a four-bedroom house situated on a two-acre lot in Great Falls, Virginia;[3] $6,060 per month in credit card payments; $1,700 per month in recreation expenses;[4] and $4,903 per month in support of his dependents, which is composed chiefly of private school tuition.

Of the debtor's four children who reside with him, three are enrolled in private schools, and a fourth in public school. One child is enrolled in a local Catholic parochial high school, where the annual tuition is $7,000 per year; a second child is enrolled in a private girls' school in McLean, Virginia, where the tuition is $25,000 per year; and, the third, his son, is enrolled in an out-of-state private academy that specializes in children with learning disabilities.[5] The tuition at this school is $36,000 per year. The total cost of private schooling

---

**3.** The debtor rents the house from his employer, and the rent is deducted from his paycheck. The debtor testified that he is responsible for the maintenance on the house, which is an additional, on average, $2,280 per month. Recent expenditures have included the construction of a brick wall in front of the house, the repaving of the driveway, and the replacement of the septic tank and air conditioners.

**4.** The monthly recreation expenses consist primarily of his children's recreational activities, including athletic and school programs. This amount also includes the expenses related to the care and maintenance of his eldest daughter's competition horse, including boarding the horse at stables in Sterling, Virginia.

**5.** The record does not reflect whether the debtor's son attends this school owing to a medical necessity.

for the debtor's children is $68,000 per year.

On May 2, 2002, the debtor filed a voluntary Chapter 7 petition, accompanied by his schedules and statement of financial affairs. Thereafter, on August 7, 2002, the appellant, W. Clarkson McDow, Jr., the United States Trustee ("Trustee"), filed a motion to dismiss, pursuant to 11 U.S.C. § 707(a), in United States Bankruptcy Court in the Eastern District of Virginia ("bankruptcy court"). In support of this motion, the Trustee argued that there was "cause" to dismiss the debtor's case because he filed his petition for bankruptcy in bad faith. More specifically, the Trustee argued that "cause" under § 707(a) includes filing a petition in bad faith and that the definition of "bad faith" should include circumstances where the debtor leads a "lavish lifestyle" and accordingly, is capable of satisfying his debts over time were he to modify his lifestyle. On November 19, 2002, the bankruptcy court denied the Trustee's motion to dismiss, holding that the "mere ability to repay . . . is simply insufficient grounds, . . . to allow dismissal of the case." While the debtor had the ability to repay his debts over time and enjoyed a "lifestyle that would undoubtedly be the envy of the vast majority of those who are compelled by financial circumstances to file in [bankruptcy] court," the debtor's case presented none of the "egregious circumstances" that were present in other bankruptcy cases. The bankruptcy court concluded that the ability to repay one's debts must be coupled with some other "egregious circumstances" to warrant dismissal for lack of good faith. *See In re William Carl Smith*, Case No. 02–82137 (Bankr.E.D. Va. October 23, 2002) (Transcript).

On December 2, 2002, the Trustee filed a notice of appeal of the bankruptcy court's decision, and oral argument was heard on May 2, 2003. The matter is now ripe for disposition.

## II.

■ A district court's scope of review of a bankruptcy court's decision is clear and well-established: A bankruptcy court's findings of fact are reviewable only for clear error, while its conclusions of law are subject to de novo review. *See In re Johnson*, 960 F.2d 396, 399 (4th Cir.1992). Mixed questions of law and fact are also reviewed *de novo*. *See Litton v. Wachovia Bank*, 330 F.3d 636, 641–42 (4th Cir.2003).

The bankruptcy court's factual findings, which are recited in Part I, are not in dispute; indeed, the debtor's financial information is derived from the schedules he filed with his bankruptcy petition. Thus, at issue and subject to *de novo* review here are the bankruptcy court's legal conclusions (1) that "cause" under § 707(a) includes bad faith on the part of a debtor, and (2) that this debtor's ability to repay his debts and his "lavish lifestyle" alone, without other evidence of wrongdoing or egregious circumstances, was insufficient "cause" for dismissal of a Chapter 7 petition.

### A.

No Fourth Circuit decision squarely addresses these questions. Given this, the search for an answer to the first question properly begins with an examination of § 707(a) itself, which provides that "[t]he court may dismiss a case under this chapter only after notice and a hearing and only for cause, *including*." The statute then goes on to provide three examples of "cause" for discretionary dismissal:

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees or charges required under chapter 123 of title 28; and

(3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

11 U.S.C. § 707(a) (emphasis added).

■ "Cause" is not expressly defined in § 707(a); stated instead are three non-exclusive,[6] illustrative grounds for dismissal. In these circumstances, the sensibly settled construction canon of *ejusdem generis* is a reliable guide to what other grounds may qualify as "cause" under § 707(a). This canon holds that "the meaning of an ambiguous term may be determined by reference to other terms accompanying it in the statute." *United States v. Davis*, 872 F.Supp. 1475, 1480 (E.D.Va.1995); *United States v. Parker*, 30 F.3d 542, 553 n. 10 (4th Cir.1994) (applying *ejusdem generis* to interpret general statutory terms "in light of the specific terms that surround it") (quoting *Hughey v. United States*, 495 U.S. 411, 419, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990)). In other words, "where an enumeration of specific words is supplemented by a more general reference, the general term may be limited to the class suggested by the enumerated words." *Davis*, 872 F.Supp. at 1480 (citing *Harrison v. PPG Industries, Inc.*, 446 U.S. 578, 588, 100 S.Ct. 1889, 64 L.Ed.2d 525 (1980)). Thus, the next step in the analysis is to ask whether a debtor's bad faith falls within the same class as the three illustrative examples of "cause" enumerated in § 707(a). It does.

■ In general, a debtor's "bad faith" or "lack of good faith" is evidenced by the debtor's deliberate acts or omissions that constitute a misuse or abuse of the provisions, purpose, or spirit of the Bankruptcy Code.[7] Similarly, a debtor's unreasonable delay, failure to pay required fees and failure to meet filing deadlines are all acts or omissions that may reflect a debtor's misuse of the bankruptcy process; in the absence of inadvertence or excusable neglect, they bespeak a debtor's lack of good faith in invoking the bankruptcy process. It follows, therefore, that a debtor's bad faith acts or omissions fall into the same class of such acts or omissions as do the three illustrative examples of "cause" for dismissal set forth in § 707(a), namely the class of acts or omissions that involves a misuse or abuse of the bankruptcy pro-

---

**6.** *See* 11 U.S.C. § 102(3) (defining "including," in the Title 11 context, to be "not limiting"); *Neary v. Padilla (In re Padilla)*, 222 F.3d 1184 (9th Cir.2000); *Huckfeldt v. Huckfeldt (In re Huckfeldt)*, 39 F.3d 829, 831 (8th Cir.1994); *Industrial Insurance Services, Inc. v. Zick (In re Zick)*, 931 F.2d 1124, 1126–27 (6th Cir.1991).

**7.** While no case has been found that defines a debtor's bad faith in precisely these terms, several cases use language essentially consistent with this formulation in finding that "cause" under § 707(a) includes a debtor's bad faith. *See, e.g., In re Zick*, 931 F.2d at 1127 (citing *In re Brown*, 88 B.R. 280 (Bankr.D.Hawai'i 1988) (holding that "good faith is an implicit jurisdictional requirement and requires inquiry into any abuse of the provisions, the purpose [and]...spirit of the bankruptcy law and into whether the debtor requires the liberal protection of the Code")); *Tamecki v. Frank (In re Tamecki)*, 229 F.3d 205, 207 (3rd Cir.2000) (citing *In re Marks*, 174 B.R. 37, 40 (E.D.Pa.1994)) (holding that "[at] the very least, good faith requires a showing of honest intention" on the debtor's part); *see also Kestell v. Kestell (In re Kestell)*, 99 F.3d 146, 149 (4th Cir.1996) (citing *In re Mascolo*, 505 F.2d 274, 278 (1st Cir.1974)) (noting that "the right of debtors to a fresh start depends upon the honest and forthright invocation of the Code's protections....[A]ccuracy, honest, and full disclosure are critical to the functioning of bankruptcy, and are inherent in the bargain for the discharge").

cess.[8] It then further follows, given the rule of *ejusdem generis*, that cause for dismissal under § 707(a) includes a debtor's bad faith acts or omissions. In other words, under § 707(a), a debtor's bad faith acts or omissions may, in the totality of the circumstances, constitute cause for dismissal in the sound discretion of the bankruptcy court. *See In re Zick*, 931 F.2d at 1127; *In re Tamecki*, 229 F.3d at 207.

■ This conclusion finds firm support from two categories of caselaw. First, two circuit courts, the Sixth and the Third, and a number of bankruptcy courts have reached the same result on essentially the same reasoning.[9] Second, caselaw in this circuit and elsewhere construing similar dismissal for cause provisions elsewhere in the bankruptcy code also supports the conclusion that a debtor's bad faith acts fall within the same class of "causes" for dismissal.[10] This class of cases is especially persuasive given the sensible notion that dismissal for cause provisions in one part of the bankruptcy code should not have a different meaning from the same provisions elsewhere in the code.[11] In other

8. In other words, § 707(a)'s three enumerated examples of cause for dismissal and a debtor's bad faith acts or omissions may be viewed as intersecting subsets of the set of acts or omissions of a debtor that amount to abuse or misuse of the bankruptcy process.

9. *See Zick*, 931 F.2d at 1127 (holding that lack of good faith is cause for dismissal of a debtor's petition under § 707(a)); *Tamecki*, 229 F.3d at 208 (same); *In re Griffieth*, 209 B.R. 823, 827 (Bankr.N.D.N.Y.1996) (same); *In re Davidoff*, 185 B.R. 631, 636 (Bankr.S.D.Fla. 1995) (holding that a "determination of good faith requires an inquiry into any possible abuses of the provisions, purposes, or spirit of the bankruptcy law and whether the debtor genuinely needs the liberal protections afforded by the Bankruptcy Code"); *In re Cappuccetti*, 172 B.R. 37, 39 (Bankr.E.D.Ark.1994) (holding that lack of good faith is cause for dismissal under § 707(a)); *In re Hammonds*, 139 B.R. 535, 541 (Bankr.D.Col.1992) (holding that a debtor's good faith is an "implicit jurisdictional prerequisite to the filing of a case under the Bankruptcy Code"); *In re Brown*, 88 B.R. at 283 (same).

Arguably, an additional circuit, the Eighth, deserves to be included in this group. In *Huckfeldt*, the Eighth Circuit held that "some conduct constituting cause to dismiss a Chapter 7 petition may readily be characterized as bad faith," but that dismissals for bad faith under § 707(a)'s cause provision should be limited to "extreme misconduct falling outside the purview of more specific Code provisions," such as using bankruptcy protection as a "scorched earth" tactic against a "diligent creditor," or as a "refuge from another court's jurisdiction." *See Huckfeldt*, 39 F.3d

at 832 (holding that the debtor's non-economic motives, namely frustrating a divorce decree and attempting to force his former wife into bankruptcy, could be readily characterized as bad faith and was "cause" to dismiss the petition). *See also Blumenberg v. Yihye (In re Blumenberg)*, 263 B.R. 704, 713 (Bankr. E.D.N.Y.2001) (noting that "[a] careful reading of the decisions of the Sixth and Eighth Circuits shows that their respective 'standards' are overlapping and perhaps indistinct").

10. *See, e.g., Carolin Corp. v. Miller*, 886 F.2d 693, 698–700 (4th Cir.1989); *In re Kestell*, 99 F.3d at 147–49; *In re Love*, 957 F.2d 1350, 1354 (7th Cir.1992) (holding that lack of good faith is grounds is sufficient "cause" for dismissing a Chapter 13 petition) (citing *In re Smith*, 848 F.2d 813, 816 n. 3 (7th Cir.1988)).

11. *See Desert Palace v. Costa*, —— U.S. ——, 123 S.Ct. 2148, 2153–54, 156 L.Ed.2d 84 (2003) (holding that "it would be logical to assume" that the word "demonstrates" in one provision of Title VII has the same meaning as that word does in another provision of Title VII) (citing *Commissioner v. Lundy*, 516 U.S. 235, 250, 116 S.Ct. 647, 133 L.Ed.2d 611 (1996)); *National Coalition for Students with Disabilities Education, Legal Defense Fund v. Allen*, 152 F.3d 283, 290–91 (4th Cir.1998) (applying the "normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning" in holding that the word "offices" has the same meaning in one provision of the National Voter Registration Act that it does in another provision of that Act).

words, the "cause" for dismissal provisions throughout the bankruptcy code should be construed uniformly to have the same meaning and content.

*Carolin Corp. v. Miller*, 886 F.2d 693, 698–700 (4th Cir.1989), is particularly instructive in this regard. There, the Fourth Circuit concluded that the "dismissal for cause" provision in Chapter 11, governing bankruptcy reorganization procedures for businesses, includes dismissal for filing the petition in bad faith. Significantly, the "for cause" provisions in Chapter 11 and § 707(a) are similarly phrased and structured. Section 1112(b) provides that a bankruptcy court may convert a Chapter 11 case to a Chapter 7 case, or dismiss the case under Chapter 11, "whichever is in the best interest of creditors and the estate, *for cause....* " This section, like § 707(a) then proceeds to enumerate illustrative examples of "cause." [12] Thus, just as the Fourth Circuit held that "cause" in § 1112(b) includes bad faith, based in part on the examples provided in the statute, [13] so to is it appropriate to conclude that "cause" in § 707(a) includes bad faith as a basis for discretionary dismissal.

*Carolin* is also significant for yet another reason. The Fourth Circuit there also recognized a general good faith require-

---

**12.** Section 1112(b) provides that a the following ten circumstances are examples of "cause" for dismissal or conversion to Chapter 7:

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan;

(3) unreasonable delay by the debtor that is prejudicial to creditors;

(4) failure to propose a plan under section 1121 of this title within any time fixed by the court;

(5) denial of confirmation of every proposed plan and denial of a request made for additional time for filing another plan or a modification of a plan;

(6) revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title;

(7) inability to effectuate substantial consummation of a confirmed plan;

(8) material default by the debtor with respect to a confirmed plan;

(9) termination of a plan by reason of the occurrence of a condition specified in the plan; or

(10) nonpayment of any fees or charges required under chapter 123 of title 28. 11 U.S.C. § 1112(b).

**13.** Also worth noting is that the Fourth Circuit noted in *Carolin* that there are "three distinct reasons" that a generalized good faith filing requirement appears in § 1112(b), two of which are applicable to the § 707(a) context: (1) the section's "listed circumstances are generally consistent with, and may in fact affirmatively evidence, a *subjective* lack of good faith on the part of the...petitioner;" (2) the section permits "dismissal not only in the enumerated circumstances but, more generally, 'for cause,' further suggesting the propriety of dismissal in the face of a petitioner's lack of good faith." *See id.*, 886 F.2d at 699 (emphasis in original).

The *Carolin* analysis is instructive here because the enumerated grounds in § 707(a) are akin to those found in § 1112(b), and it follows thus that the *Carolin* reasoning is applicable to the Chapter 7 context and supports the conclusion that lack of good faith is a "cause" for dismissal under § 707(a). While § 1112(b) lists more illustrative grounds for "cause" applicable only to the Chapter 11 reorganization context, two of the grounds articulated in § 707(a) are also contained in § 1112(b): unreasonable delay by a debtor and the failure to pay required fees. As the listed factors were considered evidence of subjective bad faith in the Chapter 11 context, so too would the presence of the same factors in § 707(a) evidence a debtor's lack of good faith in filing for Chapter 7 protection. A debtor who delays in filing his Chapter 7 petition to the detriment of his creditors, or omits submitting required information with his petition, or fails to pay the requisite fees— further delaying the bankruptcy process—can fairly be said to have filed his bankruptcy petition in bad faith.

ment for debtors invoking the bankruptcy process. While acknowledging "the lack of express authorization in the statutes," it noted that "courts presented with the question have uniformly held that generally, an implicit prerequisite to the right to file [a bankruptcy petition] is 'good faith' on the part of the debtor, the absence of which may constitute cause for dismissal." *Carolin*, 886 F.2d at 698 (citing *In re Winshall Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir.1985)). The rationale for this is that a good faith requirement protects "the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (*i.e.,...discharge of debts...*) available only to those debtors and creditors with 'clean hands.'" *Carolin*, 886 F.2d at 698 (citing *In re Little Creek Development Co.*, 779 F.2d 1068, 1072 (5th Cir.1986)). As a result, bankruptcy courts "have traditionally drawn upon their powers of equity to prevent abuse of the bankruptcy process and to

ensure that a 'case be commenced in good faith to reflect the intended policies of the Code.'" *See Kestell v. Kestell (In re Kestell)*, 99 F.3d 146, 147 (4th Cir.1996).[14] This is yet another reason for finding that bad faith is a candidate cause for dismissal under § 707(a).

■ A review of pertinent authority is not complete without noting that the Ninth Circuit has flatly rejected bad faith as "cause" for dismissal under § 707(a). *See Padilla*, 222 F.3d at 1193 (rejecting a definition of "cause" that included bad faith). The Ninth Circuit's holding in *Padilla* is directly contrary to the conclusion reached here.[15] In holding that lack of good faith does not constitute "cause" under § 707(a), the Ninth Circuit distinguished the "for cause" provision in Chapter 7 from the same provision in Chapters 11 and 13 based on the post-filing relationship between the debtor and his creditors.[16]

**14.** The conclusion reached here—that lack of good faith is "cause" for dismissal under § 707(a)—finds further support in the Fourth Circuit's construction of § 707(b). *See In re Kestell*, 99 F.3d 146, 147–49 (4th Cir.1996). This section, the companion to § 707(a), allows a court, *sua sponte*, to dismiss a Chapter 7 petition for "substantial abuse" of the bankruptcy process. *See* 11 U.S.C. § 707(b). In reaching this conclusion, the Fourth Circuit reasonably noted that the Bankruptcy Code, "both in the general structure and in specific provisions, authorizes bankruptcy courts to prevent use of the bankruptcy process to achieve illicit purposes," and accordingly, Congress "has made it clear...that misuse of the bankruptcy process should not be countenanced." *Id.* 99 F.3d at 149 (discussing 11 U.S.C. § 727, 11 U.S.C. § 1112(b), and 11 U.S.C. § 105(a)). The Fourth Circuit's reasoning in *Kestell* is equally applicable to § 707(a), and is therefore consistent with the conclusion reached here.

**15.** In *Padilla,* the Ninth Circuit commenced its analysis with the four statutory provisions that allow creditors and trustees to object to the discharge of debt. *See Padilla*, 222 F.3d at 1191–92 (discussing 11 U.S.C. § 523(a); 11

U.S.C. § 727(a); 11 U.S.C. § 707(b); 11 U.S.C. § 707(a)). Employing the statutory construction canon requiring that "where both a specific and general statute address the same subject matter, the specific one takes precedence regardless of the sequence of the enactment, and must be applied first," the Ninth Circuit concluded that a debtor's conduct or inaction is properly addressed under the specific grounds enumerated in § 523, § 727, § 707(b), and § 707(a). *See id.,* 222 F.3d at 1192. *Padilla* involved a debtor with consumer debt, and the Ninth Circuit held that his case was properly governed by § 707(b) not § 707(a).

**16.** In chapters 11 and 13, reorganization statutes that allow debtors to retain assets while restructuring obligations to creditors in the form of repayment plans, debtors have continuing, "protracted" relationships with their creditors. In contrast, Chapter 7 is a liquidation statute in which a debtor's non-exempt assets are sold to pay off his creditors. *See Padilla*, 222 F.3d at 1193 (citing Katie Thein Kimlinger & William P. Wassweiler, *The Good Faith Fable of 11 U.S.C. § 707(a): How Bankruptcy Courts Have Invented a Good Faith*

Since there is no ongoing relationship between the debtor and creditor in the Chapter 7 context, the Ninth Circuit held that a Chapter 7 discharge should be available to any debtor willing to liquidate his assets, regardless of his motivation for seeking that remedy. *See Padilla,* 222 F.3d at 1193. This reasoning, while plausible, is not ultimately persuasive. While both Chapters 11 and 13 specifically contain a good faith requirement in a debtor's proposal of a payment plan,[17] which was a basis for the Ninth Circuit's holding in *Padilla,* the text of the "for cause" provision in Chapters 7, 11, and 13 are all equally devoid of a specific "good faith" filing requirement. Moreover, the Fourth Circuit's analysis in *Carolin,* in finding a good faith filing requirement in Chapter 11, is not confined to the Chapter 11 context; to the contrary, it is equally applicable to § 707(a). Judge Rymer, dissenting in *Padilla,* has it right: A good faith requirement "has long been understood as an implicit requirement in Chapter 7 bankruptcy proceedings," and accordingly "is a valid basis of decision in a 'for cause' dismissal by a bankruptcy court." *See id.,* 222 F.3d at 1194 (Rymer, J., dissenting).

Accordingly, under § 707(a), a debtor's bad faith acts or omissions may, in the totality of the circumstances, constitute cause for dismissal in the sound discretion of the bankruptcy court.

### B.

The next step in the analysis is to consider what type of conduct might constitute bad faith cause for dismissal, and more specifically whether this debtor's ability to repay his debts over time and the nature of his lifestyle suffice to constitute bad faith in filing his Chapter 7 petition.

▮ A debtor's ability to repay debts is, by itself, not "cause" for dismissal under § 707(a). The legislative history makes this point with crystal clarity:[18] "[This] section does not contemplate, . . . that the ability of the debtor to repay his debts in whole or in part constitutes adequate cause for dismissal. To permit dismissal on that ground would be to enact a nonuniform mandatory chapter 13, in lieu of the remedy of bankruptcy."[19]

▮ Given this declaration of pellucidly clear Congressional intent, some courts have held that ability to repay one's debts does not amount to "cause" for a § 707(a) dismissal.[20] Most courts, more cautiously, have held that the ability to

---

*Filing Requirement for Chapter 7 Debtors,* 13 Bankr.Dev. J. 61, 97 (1996) (hereinafter "Kimlinger and Wassweiler")).

**17.** *See* 11 U.S.C. § 1112(b); 11 U.S.C. § 1307(c).

**18.** In the hierarchy of interpretive tools, of course, the statutory language comes first. Only when that language is ambiguous is it necessary to examine first the statute's structure and purpose, and then lastly the legislative history, which is last and least authoritative because it ultimately matters what legislators do, *i.e.* enact, not what they say about what they do. What various legislators say about a statute is often contradictory, unclear, ambiguous, or merely an expression of one of many competing views of a statute not necessarily shared by others who voted for it. In some instances, however, as here, unambiguous, clear, uncontradicted, and specific legislative history can serve as a reliable interpretive guide. *See generally Aziz v. Sullivan,* 800 F.Supp. 1374, 1379–80 (E.D.Va.1992) (relying on clear and unambiguous legislative history in conducting statutory interpretation).

**19.** *See In re Marks,* 174 B.R. 37, 41 (citing S.Rep. No. 989, 95th Cong., 2d Sess. 94 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5880; H.R.Rep. No. 595, 95 Cong., 1st Sess. 380 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6336).

**20.** *See, e.g., Huckfeldt,* 39 F.3d at 832 (holding that dismissal under Chapter 7 "for cause" is warranted only when the debtor's filing de-

repay is not grounds "in and of itself" for dismissal, but that it may be a factor to consider in the totality of circumstances in determining whether the debtor has filed a petition in bad faith.[21] This formulation is both sensible and consistent with the legislative history, which states that the ability to repay is not an "adequate" dismissal cause.

⬛ Most courts considering whether a debtor's deliberate acts or omissions amount to a bad faith cause for dismissal under § 707(a) sensibly employ a totality of the circumstances test focusing on a variety of factors, including ability to repay and a lavish lifestyle.[22] Only one court has held that these factors alone

parts from the "fundamental principles and purposes of Chapter 7" and not based on the ability to pay); *In re Khan,* 172 B.R. 613, 620–25 (Bankr.D.Minn.1994) (holding that ability to repay factors should be analyzed exclusively under 11 U.S.C. § 707(b) and not § 707(a)); *In re Goulding,* 79 B.R. 874, (Bankr.W.D.Mo.1987) (citing the legislative history and noting that "it is difficult to contemplate how Congress could more emphatically have stated that the debtor's [ability to repay his debts] is not 'cause' " under § 707(a)).

21. *See In re Cecil,* 71 B.R. 730 (Bankr. W.D.Va.1987) (holding that "it is clear that the ability to repay in whole or in part is not grounds, in and of itself, for dismissal under § 707(a));" *In re Griffieth,* 209 B.R. at 831; *In re Cappuccetti,* 172 B.R. at 38; *In re Davidoff,* 185 B.R. at 636; *In re Studdard,* 159 B.R. 852, 856 (Bankr.E.D.Ark.1993); *In re Jones,* 114 B.R. 917, 926 (Bankr.N.D.Ohio 1990); *In re Brown,* 88 B.R. at 284.

*See also Green v. Staples (In re Green),* 934 F.2d 568, 572 (4th Cir.1991). In *Green,* the Fourth Circuit rejected the adoption of *per se* dismissal rule if a debtor has the ability to repay his debts substantially under 11 U.S.C. § 707(b), which governs consumer debts. *See id.* In doing so, the Fourth Circuit relied on the legislative history of § 707(a) to determine that neither § 707(a) nor § 707(b) permitted a debtor's ability to pay to be the sole ground for dismissal. The Fourth Circuit held that legislative history of § 707(a) applied equally to § 707(b), reasoning that since Congress had explicitly rejected a future income test when it adopted § 707(b), it left the Senate Report for § 707(a) "undisturbed because no conflict was perceived between the report and § 707(b)." *See id.,* 934 F.2d at 571. Instead, the Fourth Circuit adopted a "totality of the circumstances" approach in determining whether a debtor has filed in good faith, explaining that a debtor's "relative solvency

may raise an inference" that a debtor was abusing the bankruptcy process in order to take "unfair advantage of his creditors." *Id.* Other factors to consider in the § 707(b) analysis include the circumstances under which the debtor filed the petition, whether the debtor's schedules and statements filed with the petition are accurate, and whether the debtor's proposed family budget is excessive. *Id.*

Accordingly, consistent with *Green's* holding that § 707(a)'s legislative history regarding a debtor's ability to pay applies equally to § 707(b), a debtor's ability to repay is a permissible factor in the § 707(a) analysis.

22. A review of these cases disclose that the following factors are typically considered:

(1) The debtor's concealment or misrepresentation of assets and/or sources of income, such as the improper or unexplained transfers of assets prior to filing;

(2) The debtor's lack of candor and completeness in his statements and schedules, such as the inflation of his expenses to disguise his financial well-being;

(3) The debtor has sufficient resources to repay his debts, and leads a lavish lifestyle, continuing to have excessive and continued expenditures;

(4) The debtor's motivation in filing is to avoid a large single debt incurred through conduct akin to fraud, misconduct, or gross negligence, such as a judgment in pending litigation, or a collection action;

(5) The debtor's petition is part of a "deliberate and persistent pattern" of evading a single creditor;

(6) The debtor is "overutilizing the protection of the Code" to the detriment to his creditors;

(7) The debtor reduced his creditors to a single creditor prior to filing the petition;

suffice as a basis for dismissal.[23] Most require far more to warrant dismissal and this seems correct given § 707(a)'s clear legislative history.[24]

(8) The debtor's lack of attempt to repay creditors;

(9) The debtor's payment of debts to insider creditors;

(10) The debtor's "procedural gymnastics" that have the effect of frustrating creditors;

(11) The unfairness of the debtor's use of the bankruptcy process.

See Zick, 931 F.2d at 1129; In re Griffieth, 209 B.R. at 826; In re Spagnolia, 199 B.R. 362, 365 (Bankr.W.D.Ky.1995); In re Hammonds, 139 B.R. at 542.

It is appropriate to list ability to repay and lavish lifestyle as a single factor because these points are closely related. A lavish lifestyle bespeaks an ability to repay; a debtor enjoying a lavish lifestyle may well be able to adjust his lifestyle to effect repayment of his debts. Of course, some lavish lifestyles reflect only persons living beyond their means. By the same token, ability to repay is not always reflected in a lavish lifestyle, as persons may choose to lead a modest lifestyle and give their money away to charities. But this choice, while more admirable than spending money on gambling, prostitution, or other illegal pursuits, is of no avail to a debtor, because the Bankruptcy Code does not allow a debtor to prefer his favorite charity over his creditors. See In re Griffieth, 209 B.R. at 828 (holding that "debtors have no right to more discretionary income than other debtors merely because they wish to use some of it to make charitable contributions") (quoting In re Cavanaugh, 175 B.R. 369, 374 (Bankr.D.Idaho 1994) (holding that a debtor's tithing was "discretionary" rather than "necessary for the debtor's support")).

The legislative history makes clear that ability to repay is not, by itself, a bad faith cause for dismissal under § 707(a). Nor is a lavish lifestyle, unless that lifestyle involves a deliberate attempt to hide or conceal assets from creditors or similar wrongdoing. In those circumstances, a debtor's lifestyle might pay a role in determining whether he filed his petition in bad faith. In sum, neither an ability to repay nor a lavish lifestyle alone or together are sufficient to constitute a bad faith cause for dismissal under § 707(a)

**23.** See In re Studdard, 159 B.R. at 856 (holding that debtors who have the ability to repay their debts could not continue to spend $3500 a month on their children's private college tuition and living expenses to the detriment of their creditors).

**24.** See In re Keobapha, 279 B.R. 49, 53 (Bankr.D.Conn.2002) (holding that the fact that debtor was seeking to discharge a single debt was insufficient, by itself, to find bad faith when the debtor did not continue to live a lavish lifestyle, did not transfer assets prior to filing for bankruptcy or hide assets from the court); In re Kamen, 231 B.R. 275, 279 (Bankr.N.D.Ohio 1999) (dismissing a debtors' bankruptcy petition for bad faith because debtors had "recklessly accumulated" excessive debt, including several vacations, leases on three cars, $10,000–$15,000 on their daughter's wedding, and extensive home remodeling); In re Griffieth, 209 B.R. at 826 (finding that debtors had filed in bad faith because (1) the debtors refused to undertake any "belt-tightening" and alter their lavish lifestyle, which included charitable contributions of 10% of their income, private school tuition, and other "excessive" expenditures on dry cleaning, transportation, and insurance; (2) the debtors were seeking to discharge primarily a single debt; (3) the debtors did not make a good faith attempt to repay their creditors, as evidenced by their rejection of a reasonable counter-offer of settlement by the IRS; and (4) the debtors' federal tax liability of $ 543,728 arose because debtors failed to pay their taxes in full each year over the course of ten years, thereby incurring additional liabilities in the form of penalties and interest); In re Cappuccetti, 172 B.R. at 40 (finding that debtors had filed in bad faith because (1) there was essentially a single creditor and the Chapter 7 petition was filed in response to the IRS' collection efforts; (2) they lived a "fairly luxurious lifestyle," and made no attempt to reduce their expenses, which included expensive housing and a country club membership; (3) they had the ability to repay their debts; (4) there were numerous inaccuracies and misstatements on the their schedules; and (5) they attempted to place assets out of reach from their creditors); In re Josey, 169 B.R. 138, 140 (Bankr. S.D.Ohio 1994) (citing In re Bridges, 135 B.R. 36, 37–38 (Bankr.E.D.Ky.1991)) (holding that § 707(a) dismissal was not appropriate "despite that debtor had sufficient income to re-

To be sure, some cases have approved dismissals of debtors' petitions for bad faith where, as here, evidence existed of lavish expenditures on luxuries such as private school education[25] and expensive housing.[26] As one court noted "[b]ankruptcy protection was not intended to assist those who, despite their own misconduct, are attempting to preserve a comfortable standard of living at the expense of their creditors." *In re Kamen*, 231 B.R. at 278. Yet, it is significant to note that in each of these cases, there is also present some evidence of debtor misconduct, whether it be misrepresenting assets and expenses on schedules and statements filed with the petition, or committing fraudulent acts at the ex-

pense of his creditors, such as transferring significant assets beyond their reach.[27] Indeed, virtually every case that has addressed the issue has heeded the Sixth Circuit's holding that dismissals for lack of good faith "should be confined carefully and . . . generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish lifestyle, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence." *Zick*, 931 F.2d at 1128.[28]

▮ Such "egregious circumstances" are not present in this case.[29] It is true

---

pay debts because moving creditor failed to show fraud or misconduct"); *In re Barnes*, 158 B.R. 105, 108 (Bankr.W.D.Tenn.1993) (holding that debtors' failure to alter their lifestyle, and instead constructed a new home, purchased three new vehicles, and took a vacation constituted bad faith); *In re Hammonds*, 139 B.R. at 543 (holding that (1) the transfer of non-exempt assets to the debtor's spouse; (2) a continuing "comfortable" lifestyle; (3) the avoidance of a single creditor; (4) "less than candid, full disclosure"; and (5) the "procedural gymnastics" in bankruptcy court constituted bad faith); *In re Jones*, 114 B.R. at 926 (lack of good faith exists when the debtor can repay his debts, engaged in fraudulent conduct, and attempted to conceal income); *In re Brown*, 88 B.R. at 284 (lack of good faith exists when the debtor can repay his debts and transferred profits of his medical practice to avoid paying a malpractice judgment).

25. *See, e.g., In re Griffieth*, 209 B.R. at 828 (holding that absent some justification for their children's private school education, a debtor's annual expense of $22,920 for private school is "unreasonable"); *Studdard*, 159 B.R. at 856 (noting that "debtors owe no duty to their children to provide them with nonessential luxuries while the debtors' unsecured creditors receive no payment on their just claims").

26. *See, e.g., Cappuccetti*, 172 B.R. at 40 (holding that the debtors' decision to live in a

condominium adjacent to a golf course at the monthly rental rate of $1000–"a very large amount for [that] geographic area," in addition to the debtors' two time-share properties in South Carolina, was evidence of their luxurious lifestyle that constituted bad faith); *Barnes*, 158 B.R. at 109 (holding that the debtors' decision to borrow money to build a new home with a pool and outbuilding thereby incurring additional debt "to perpetuate their chosen lifestyle" was evidence of bad faith).

27. *See, e.g., In re Marks*, 174 B.R. at 41 (holding that most instances of dismissal for bad faith involve "concealment, misrepresentation, or unexplained transfers to place assets beyond the reach of creditors").

28. *See, e.g., In re Kamen*, 231 B.R. at 278; *In re Josey*, 169 B.R. at 140; *In re Cappuccetti*, 172 B.R. at 39; *In re Studdard*, 159 B.R. at 856; *In re Barnes*, 158 B.R. at 108; *In re Hammonds*, 139 B.R. at 541.

29. Specifically, the bankruptcy court found that
  (1) the debtor had not filed "for the purpose of pushing someone else into bankruptcy;"
  (2) the debtor did not have a single debt that resulted from fraud or conduct "akin to fraud;"
  (3) the debtor "did not spend himself into bankruptcy" and his tax debt was not

that this record reflects that the debtor appears able to repay his debts over time were he to make significant adjustments in his luxurious lifestyle. His living and private school expenses far exceed amounts that other courts have adjudged to be excessive.[30] The debtor also rejected a reasonable counter-offer by the IRS, presumedly "refusing to compromise [his] lifestyle" because "payment of [his]...IRS obligation would require unwelcome belt-tightening." *See Griffieth*, 209 B.R. at 829 (holding that the debtors' failure to make a good faith effort to repay their IRS debt constituted an element of bad faith). The proposed IRS settlement would have amounted to approximately $7000 per month, an amount the debtor could have easily paid by modifying his lifestyle, given his monthly take-home pay of $28,843. Yet, there is no evidence of any fraudulent, or otherwise wrongful conduct either in connection with the accumulation of the debt or the filing of the Chapter 7 petition. Indeed, while courts have dismissed petitions by debtors who seek to discharge primarily a single large obligation, while reaffirming or repaying other remaining debts, the debtor here did not incur his debt through "misconduct, fraud, or gross negligence" as most courts have required

as a prerequisite to dismissal for bad faith. *See Zick*, 931 F.2d at 1129. In sum, significant and dispositive here is the absence in this case any evidence of wrongdoing on the part of the debtor, either in the accumulation of the debt or in the filing of his Chapter 7 petition.

A different result would obtain had "egregious circumstances" been present: for example, if the debtor transferred his assets prior to filing his bankruptcy petition, thereby placing them beyond the reach of the IRS; if the debt had incurred through the debtor's own misconduct; if the debtor had not been completely forthright and accurate on his schedules and statements submitted with his bankruptcy petition; or if the debtor's current expenditures were on illegal activities, such as gambling or prostitution, instead of private schooling for his children and housing.

The result reached here may understandably offend some on the ground that this debtor, given his income and lifestyle, is a member of a class of people who are undeserving of the privileges and benefits of the Bankruptcy Code. *i.e.* the class of people who can pay their debts, but choose instead to spend their substantial incomes on what most would consider luxuries.[31]

---

the result of "any judgment that was entered [against] him for some type of action that...was wrongful;"

  (4) the debtor did not manipulate the filing date of his petition to the detriment of his creditors; and

  (5) the debtor's expenditures consisted primarily of his children's tuition payments, and not on vacations, boats, cars, and other luxury items.

**30.** *See, e.g., In re Griffieth*, 209 B.R. at 828 (holding that absent some justification for their children's private school education, a debtor's annual expense of $22,920 for private school is "unreasonable"); *Studdard*, 159 B.R. at 856 (noting that "debtors owe no duty to their children to provide them with nonessential luxuries while the debtors' unsecured

creditors receive no payment on their just claims"); *Cappuccetti*, 172 B.R. at 40 (holding that the debtors' decision to live in a condominium adjacent to a golf course at the monthly rental rate of $1000–"a very large amount for [that] geographic area," in addition to the debtors' two time-share properties in South Carolina, was evidence of their luxurious lifestyle that constituted bad faith); *Barnes*, 158 B.R. at 109 (holding that the debtors' decision to borrow money to build a new home with a pool and outbuilding thereby incurring additional debt "to perpetuate their chosen lifestyle" was evidence of bad faith).

**31.** As one bankruptcy court noted, rhetorically,

Importantly, however, § 707(a) does not embody this sentiment. Any dissatisfaction with this result should therefore be addressed to Congress for it is that body, and not the courts, that has the power to alter the result reached here.[32]

Finally, it is worth noting that the result reached here does not foreclose a § 707(a) dismissal in the future should new facts and evidence warrant such action. Also, simply because the debtor has avoided dismissal at this juncture does not mean that there will be no other effective obstacles to a discharge.[33]

An appropriate Order remanding this case to the bankruptcy court will issue.

Did Congress intend the bankruptcy law to provide a method whereby yuppies and other affluent persons may serenely and luxuriously cruise down the river of life without modification or disturbance of their far above average affluent lifestyle and, with barely a ripple, wash themselves clean of debt by filing of a bankruptcy petition? . . . There is no evidence that Debtor [in *Davidoff*] has done other than live "high on the hog." There is no evidence that he made any effort to put his shoulder to the wheel. It appears the only wheel that interests him is the wheel of fortune. [But b]ankruptcy is a different game.

*Davidoff*, 185 B.R. at 636. It is worth noting that in *Davidoff*, which was not the case here, the debtors had engaged in significant wrongdoing in addition to living a lavish lifestyle. They had filed their petition in response to a collection action, and continued to give substantial financial support to their adult children; their schedules contained inflated expenses to disguise their financial well-being, and, overall, failed to make "can-

did and full disclosure[s]" in his schedules and statements. *See id.*, 185 B.R. at 635. The bankruptcy court found that the debtors had "purposefully reduced their income for the bankruptcy with the intention or, if not the intent, the option of resuming full-scale private practice after [receiving] the discharge." *Id.*, 185 B.R. at 636. Such egregious conduct is clearly not present in this case.

**32.** Notably, there appear to be legislative efforts underway to add a means test to § 707(b). This is yet another reason for the conclusion reached here, that the ability to repay, by itself, is not a cause for dismissal under § 707(a). *See Green*, 934 F.2d at 571 (noting that the legislative history of § 707(a) applied equally to § 707(b)).

**33.** Not addressed here is whether this debtor may face other effective obstacles to his receiving a discharge of his debt. *See, e.g.*, 11 U.S.C. § 727; 11 U.S.C. § 523.